Eaker B. Griggs and Lovetta Griggs v. Commissioner.Griggs v. CommissionerDocket No. 2829-70-SC.United States Tax CourtT.C. Memo 1971-33; 1971 Tax Ct. Memo LEXIS 299; 30 T.C.M. (CCH) 141; T.C.M. (RIA) 71033; February 22, 1971, Filed. *299 Petitioner was employed as a waitress at a Shoney's "Big Boy" restaurant during taxable years 1966 and 1967 and failed to maintain adequate records of income from tips received by her during these years. Respondent used a formula to ascertain the amounts of tips received by petitioner and determined deficiencies in income tax based on such amounts. Held: The formula used by respondent was reasonable and with one adjustment and the correction of an error in computation conceded by him, respondent's determination is sustained. Held further: Additions to tax under section 6653(a), I.R.C. 1954, were proper. Lovetta Griggs, pro se, 1104 E. Douglas Ave., Nashville, Tenn.John M. Wylie, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in petitioners' income tax and additions to tax under section 6653(a), Internal Revenue Code of 19541 for the years and in the amounts as follows: 142 YearDeficiencyAddition to Tax Section 6653(a)1966$244.54$12.231967219.8110.99At the trial of this case, respondent conceded that an error *300 had been made in the formula used in computing the deficiency. As a result of this error, the deficiencies and additions to tax have been reduced as follows: DeficiencyAddition to Tax Section 6653(a)1966$181.55$9.081967153.667.68The issues to be decided are: (1) Whether Lovetta Griggs received tips in larger amounts than were reported by her for the years in issue, and (2) if so, whether any part of the underpayment of tax resulting from the failure to report all tip income was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Findings of Fact Petitioners are husband and wife. They filed their joint Federal income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue at Nashville, Tennessee. Eaker B. Griggs is a party to this suit only because he filed a joint return with his wife. Reference to petitioner shall hereinafter refer to Lovetta Griggs. During the taxable years 1966 and 1967, petitioner was employed as an inside dining room waitress at Shoney's Big Boy Restaurant No. 4 (hereinafter referred to as Shoney's) located in Donelson, Tennessee, a suburb of Nashville. Shoney's is located *301 in a shopping plaza that includes a large department store, an A&P food store, a bank and several smaller specialty stores. Its operating hours during the years in question were 11 a.m. to 12 midnight, except on Friday and Saturday, when they closed at 2 a.m. Shoney's menu consisted of a variety of inexpensive entrees and sandwiches. It had an inside counter, tables and booths. It also had a room where private parties or meetings could be held. The clientele was varied and includes teenagers, businessmen, employees of the stores in the plaza, shoppers, and families. Customers going to Shoney's could either remain in their car and be waited on by a car-hop; go inside and take a seat at the counter; be seated in the dining-room area and be waited on by a waitress; or a take-out order could be placed at a "go counter." The take-out orders would not be eaten on the premises of Shoney's. No tips were received by the person working at the take-out counter. During January through June of 1966, waitresses working inside the restaurant, other than waitresses working behind the counter, were paid 45 cents per hour on the day shift and 65 cents on the night shift. From July of 1966 through March *302 of 1967, these waitresses were paid 55 cents per hour on the day shift and 75 cents on the night shift. From April 1967 through December of 1967, these waitresses were paid 60 cents per hour on the day shift and 80 cents per hour on the night shift. It was customary where petitioner worked to rotate the stations of each waitress so that each would get an equal distribution of customers. Petitioner was not required to pay the bus boys any part of any tips which she received. Petitioner began working for Shoney's in 1963 and continued to be employed by Shoney's until June of 1970. During the years in issue, she worked a shift which started at 10:30 in the morning and extended until 5 p.m. Sometimes petitioner would work until 8 p.m. rather than getting off at 5 p.m. Petitioner worked six days and an average of 35 to 40 hours per week. From the latter part of September through December of 1967, petitioner worked behind the counter at the restaurant and was paid an hourly rate of 90 cents. A waitress working behind the counter had various duties other than waiting on customers and therefore had less of an opportunity to earn a tip than did the waitresses not working behind the counter. *303 Therefore, the management paid a greater hourly wage rate. Petitioner would keep the tips she received throughout the course of a day in an apron pocket. She ate her lunch at Shoney's, for which she was charged one-half the regular price, and when available used tip money from her apron pocket to pay for her lunch. At the end of each day, she would count the money in her apron pocket to determine the amount of the tips she received for the day. 143 During the year 1966 and until sometime in May 1967, each waitress working at Shoney's was required to record on the back of her time card, on a weekly basis, the amount of tips she had received during the week. Petitioner kept no daily record of the tips she received during either of the taxable years and, accordingly, when reporting to her employer the amount of tips received, on a weekly basis, she relied upon her memory as to the amount of tips received during the preceding days of the week. Beginning sometime in May, 1967, and during the remainder of that year, each waitress was required to report on her time card the amount of tips received by her, on a daily basis. No other records were kept by either the petitioner or the restaurant *304 as to the amount of tips petitioner received during the years in question and, other than such records, the restaurant had no means by which the amount of tips received by each waitress would be determined. No records were available as to the amount of tips reported by petitioner to her employer for the year 1966. During the taxable years 1966 and 1967 petitioner was paid gross wages by Shoney's Big Boy Restaurant No. 4 of $1,325.63 and $1,589.06 respectively. Such wages did not include tips. During the taxable year 1967, petitioner's gross weekly pay, before Federal income and social security taxes were withheld, and weekly tips reported to her employer were as follows: Gross PayTotal WeeklyExcludingTips ReportedWeek EndingTipsTo Employer1- 1-67$ 20.63$ 2.751- 8-6718.981.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.651.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.101.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.9302- 5-6720.634.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.7522.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.6322.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.937.563- 5-6725.587.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.988.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.409.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.107.214- 2-6725.057.754- 9-6725.808.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.807.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.806.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.807.015- 7-6726.108.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.9010.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.809.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.807.626- 4-6726.108.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.808.266-18-67$ 24.00$ 7.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.405.887- 2-6725.507.377- 9-6715.3007-16-6725.809.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.586.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.904.678- 6-6728.888.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.406.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.256.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.3908-27-6719.5009- 3-6719.3509-10-676.6009-17-6726.258.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.807.8910- 1-6741.806.7410- 8-6741.335.5310- 8-67* 45.00010-15-6739.905.8510-22-6739.905.4710-29-6739.905.6311- 5-6739.195.7611-12-6740.855.1511-19-6740.855.5711-26-6741.325.6612- 3-6741.805.7312-10-6739.905.3512-17-6741.575.7612-17-6725.00012-24-6731.95012-31-6740.864.95Total$1,589.06$337.13*305 During the taxable years 1966 and 1967 petitioner reported to her employer that she received tips of $96.32 and $337.13 respectively. The gross wages received by petitioner during the taxable years 1966 and 1967 and the tips reported by petitioner to her employer for the years 1966 and 1967 were included in the gross receipts reported on petitioner's returns for the years in issue. In making his determination of unreported tips respondent used the following formula: The total inside sales were determihed for each year. Because part of the overall inside sales were attributable to take-out orders on which no tips were paid, the takeout sales were deducted from total inside sales to determine total sales subject to tips. Respondent then determined that an average customer would leave a 10 percent tip and, therefore, total tips were equal to 10 percent of total inside sales subject to tips. Next, the total wages paid all waitresses working inside and earning tips were established. As a result of the above, total wages of waitresses receiving tips and total sales subject to tips were determined, thus establishing a ratio of total tips to total wages. 144 A further adjustment *306 was made to the formula in petitioner's case by reducing the average ratio of tips to wages by 40 percent for personal circumstances, e.g., efficiency, age, appearance. After this latter adjustment, the resulting ratio of tips to wages was multiplied by the wages of petitioner to produce the amount of total tips received. The application of the above formula is illustrated in the following schedule: 19661967Inside Sales - Donelson$308,263.86$324,667.24Less 10% for "Take-out Sales"30,826.3932,466.72Total Waitress Sales$277,437.47$292,200.52Tips at 10% of Sales$ 27,743.75$ 29,220.05Total Waitress Wates$ 18,173.69$ 20,381.11Ratio of Tips to Wages1.531.43Wages of Waitress (Griggs)$ 1,325.63$ 1,589.06Tip Ratio Above1.531.43Less 40% for personal circumstances.61.57Tip Rate as Adjusted.92.86Tips as Determined$ 1,219.58$ 1,366.59 The following schedule sets forth for the taxable years the wages received by petitioner and reported on her return, the total amount of tips as determined by respondent, tips reported, and respondent's determination of the amount of unreported tips: YearWagesReceivedTipsDeterminedTips DeterminedTips ReportedTips Not Reported1966$1,325.63$1,219.58$ 96.32$1,123.261967$1,589.06$1,366.59$337.13$1,029.46*307 Opinion It is well established that tips constitute compensation for services rendered and, therefore, are includable in gross income under section 61(a) of the Internal Revenue Code. Harry A. Roberts, 10 T.C. 581 (1948), affd. 176 F. 2d 221 (C.A. 9, 1949); Dorothy L. Sutherland, 32 T.C. 862 (1959); Carroll F. Schroeder, 40 T.C. 30 (1963); Barry Meneguzzo, 43 T.C. 824 (1965). Petitioner does not contend otherwise but only questions the correctness of respondent's determination as to the amount of tips she received during each of the years 1966 and 1967. Respondent's determination is presumptively correct and petitioner has the burden of proving that the determination is erroneous. Welch v. Helvering, 290 U.S. 111 (1933). Every taxpayer is required by law to report in his income tax return, every item of gross income received and to maintain adequate records to substantiate these amounts. Section 6001; 2section 1.6001-1 of the Income Tax Regulations.3 If no records are kept or if such records as are kept are 145 incorrect and inadequate and do not clearly reflect the income received by the taxpayer the Commissioner is authorized, by section 446 4*309 to make a computation in accordance *308 with such method as, in his opinion, does clearly reflect the amount of income received by the taxpayer. Dorothy L. Sutherland, supra; Barry Meneguzzo, supra. The petitioner kept no records of the amount of tip income she had received during the years involved. She did, however, make a report to her employer of the tips received and the amounts so reported were included in her income tax return. Ordinarily such records might be considered sufficient to meet the requirements of section 6001. However, it is clearly apparent that the amounts so reported to her employer were inaccurate and did not include all of the tips she had received. In the first place, the records for 1966 were not available, and, if they had been, they were not reliable since such reports for the entire year 1966 and the first four months of 1967 were made on a weekly basis and petitioner admittedly relied upon her memory at least as to amounts received during the preceding days. As stated in Carroll F. Schroeder, supra, "'Memory' records are hardly the type required by Sec. 6001." See also Barry Meneguzzo, supra, wherein it is stated that "it is not at all clear that such weekly estimates would satisfy the requirements *310 of the regulations." Moreover, petitioner admittedly used her tip money to buy her own lunches and did not include the amounts so used in the reports to her employer or in her returns. Although she paid only one-half the regular price for her lunch, there is no evidence as to the amounts so spent. The unreliability of her reports is further indicated by the fact that she reported the receipt of $96.32 in tips for 1966 and $337.13 for 1967, notwithstanding the restaurant's business in 1967 increased only slightly more than 5 percent over 1966. On the basis of all the evidence we find and hold that the records which were maintained of petitioner's tip income were inadequate and inaccurate for both 1966 and 1967 and that respondent was justified in computing petitioner's tip income in accordance with a method which he thought more clearly reflected petitioner's tip income. In computing the amount of tips received by the petitioner during each of the taxable years involved, respondent applied a ratio of tips to wages. On first impression this might appear to be erroneous, since tips are based not on a waiter's wages but on the patron's bill. 5 We have given careful scrutiny to the method *311 employed herein, however, and are satisfied that the factor applied herein reflects the relationship between tips and food sales. Since no records were kept by either petitioner or the restaurant as to the sales made by the individual waitresses, respondent first determined the total sales subject to tips. He then determined that the average tip left by customers was 10 percent of sales and from this that the ratio of total tips to total wages was 1.53 for 1966 and 1.43 for 1967. He reduced this factor by 40 percent in the case of petitioner and multiplied the wages received by petitioner in 1966 and 1967 by.92 and.86, respectively, to determine the amount of tips received by petitioner in each of those years. Formulae somewhat similar to the one employed by respondent herein, wherein ratios of tips to wages were employed, have been approved by this Court in many other cases. Dorothy L. Sutherland, supra; Barry Meneguzzo, supra, and a number of Memorandum Opinions of this Court, for which we deem it unnecessary to give specific citations. Accordingly, we approve of the formula used by the respondent *312 in this case, subject to an adjustment with respect to respondent's determination that total tips were 10 percent of total sales. Not only is Shoney's not in the class of restaurants involved in the various cases hereinabove referred to, but the evidence indicates that many of its patrons either did not tip at all or tipped only moderately. This was particularly true of teenagers and those who ate at the counter. In our opinion the 10 percent figure should be reduced to 7 1/2 percent. We so hold. The remaining issue is whether petitioner is liable for the addition to tax imposed by section 6653(a).6*313 Petitioner's failure to keep 146 adequate and accurate records of her tip income was clearly due to negligence or intentional disregard of rules and regulations. Since this resulted in an underpayment of tax, petitioner is liable for the addition to tax imposed by section 6653(a). Carroll F. Schroeder, supra; Barry Meneguzzo, supra. Decision will be entered under Rule 50. Footnotes1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩*. Vacation Pay↩2. SEC. 6001. NOTICE OR REGULATIONS REQUIRING RECORDS, STATEMENTS, AND SPECIAL RETURNS. Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary or his delegate may from time to time prescribe. * * * ↩3. Income Tax Regs. § 1.6001-1 RECORDS. (a) In general. Except as provided in paragra&h (b) of this section, any person subject to tax under subtitle A of the Code, or any person required to file a return of information with respect to income, shall keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information. ↩4. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. * * * (b) Exceptions. - If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.5. Compare Charles F. Allen [Dec. 25,298(M)], T.C. Memo. 1961-348↩, filed December 29, 1961.6. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by Chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.