CARROLL F. SCHROEDER AND ANNE M. SCHROEDER,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 92365, 92371.   Filed April 12, 1963.

*Andrew F. Slaby*, for the petitioners.
*Denis J. Conlon*, for the respondent.

DAWSON, *Judge:* Respondent determined deficiencies in income tax of petitioners for the years 1957 and 1958 in the amounts of $472 and $785.20, respectively, and additions to tax under section 6653(a), I.R.C. 1954, in the amounts of $23.60 and $39.26.   The two questions for decision are: (1) What was Anne M. Schroeder's income from tips received as a waitress in the years 1957 and 1958?   (2) Was Anne M. Schroeder negligent in failing to keep records of her tip income during those years?

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Anne M. Schroeder (hereinafter called petitioner), while residing at 1982 North Prospect Avenue, Milwaukee, Wis., filed her individual Federal income tax return for the year 1957 with the district director of internal revenue at Milwaukee.

Carroll F. and Anne M. Schroeder, while residing at 1718 North Prospect Avenue, Milwaukee, Wis., filed their joint Federal income tax return for the year 1958 with the district director of internal revenue at Milwaukee.

The petitioner was employed as a waitress during part of the year 1957 at Frenchy's Restaurant, 1927 East North Avenue, Milwaukee, and at Eugene's Restaurant, 1811 East Wisconsin Avenue, Milwaukee. For the entire year 1958 she was employed as a waitress at Eugene's.

On her 1957 income tax return the petitioner reported salary at Frenchy's Restaurant in the amount of $1,197.81; salary at Eugene's Restaurant of $558.69; and total tip income of $500.   On the 1958 joint income tax return the petitioner reported salary of $1,822.61 from Eugene's and total tip income of $850.

---

[1] Consolidated for trial, briefs, and opinion with Anne M. Schroeder, Docket No. 92371.

The records of the two restaurants show, and the parties have stipulated, that for the years 1957 and 1958 the petitioner served to customers the following amounts of food and liquor in the course of her employment:

| Year | Frenchy's Restaurant [1] | Eugene's Restaurant | Total |
|---|---|---|---|
| 1957 | $13,456 | $11,056 | $24,512 |
| 1958 | | 32,248 | 32,248 |

[1] Amount shown for Frenchy's Restaurant does not include liquor served in course of her employment.

Petitioner kept no written records of her tip income during the years in question.

Frenchy's is an exquisite restaurant that has received numerous awards from such organizations as the Gourmet Society of New York, Duncan Hines, and Holiday Magazine. Each year Holiday Magazine lists 100 restaurants in the United States which are regarded as the best in particular geographical areas. For the last 8 years Frenchy's has received a Holiday Magazine award. Many delicacies are served there; for example, Elk Steak au Chaucer at $7.25, Norwegian Reindeer Steak at $6.75, Deep South Raccoon at $6.25, Scotch Grouse at $9.25, Australian Kangaroo at $6.75, and African Hippopotamus Steak at $8.75. The general price range for an evening dinner runs from $3.75 to $9.25.

At Frenchy's Restaurant during 1957 there were no kickbacks by the waitresses to the hostesses. Neither were there any payments made by them to busboys. There was also no favoritism among waitresses and each of the girls had different stations every day.

Paul LaPointe, the owner-manager of Frenchy's in 1957, personally observed that the average tips received by Frenchy's waitresses varied from 10 to 20 percent of the amount of the customer's bill, depending upon the number of persons in the party.

Eugene's is also a fashionable restaurant, specializing in seafood. It too has received numerous awards, including those of the Gourmet Society of New York, the London Guild, and Duncan Hines. The editor of Diner's Magazine has described it as one of the 10 best seafood restaurants in the United States. The prices on most items are comparable to Frenchy's except for the delicacies. There were no kickbacks by the waitresses to the hostesses at Eugene's during 1957 and 1958. However, waitresses did give busboys 60 cents a night, Sunday through Thursday; 75 cents on Friday night; and $1 on Saturday night.

At Eugene's the petitioner worked at the "cabin" station which was located to the rear of the restaurant. While it was not generally as desirable a location as the main dining room, the petitioner's as-

signment there did not adversely affect the number and amount of tips she received. In any event the petitioner was unaware of what the tips were at other stations.

The charge account records of Eugene's Restaurant show that the percentage of tips charged to total charge sales during the years 1957 and 1958 was approximately 12.5 percent and that amount included charge sales where customers did *not* also charge their tips. The records further show that the average tip charged per charge sale was about 15 percent during these years.

The petitioner is an attractive, experienced, and competent waitress. She worked at Carol's Restaurant for 7 years, at the Plankinton House for 2 years, and at Mader's German Restaurant from 1954 until 1956. While working at Mader's in 1955, she was named the "Most Popular Waitress of the Year" for the State of Wisconsin. This award was given by the Wisconsin Restaurant Association.

Petitioner worked approximately 8 hours per day 5 days a week. Her hours generally began about 4 or 5 o'clock in the afternoon. Her setup time amounted from 2 to 4 hours daily. While tips on catered-out parties were comparatively smaller, the petitioner worked only two parties during these years.

During 1957 the petitioner spent $94 per month for a new Oldsmobile "88" automobile; $50 per month for rent; $200 on charge accounts; $3 per month on union dues; $58 per year on automobile insurance; $5 per month on gas and lights; telephone bills of $2.50 per month; license plates and gasoline for the automobile at about $136; and food purchases of $120. These expenses, excluding any others which she may have had, totaled over $2,400. Yet her total reported income for that year was only $2,336. Some of the money used to make the automobile payments may have come from a divorce settlement which petitioner received in 1954.

In view of the first-class restaurants involved, the tipping practices of their customers, and other factors, the respondent determined in his notice of deficiency that the average tip received was 12 percent of the customer's bill. Respondent asserted the deficiencies against this petitioner by attributing to her as tip income 12 percent of her total sales of food and liquor at Frenchy's and Eugene's for the years 1957 and 1958.

ULTIMATE FINDINGS OF FACT

1. Petitioner received tips in at least the amounts of $2,942 and $3,870 for the years 1957 and 1958.

2. Petitioner negligently failed to keep records of the amounts received in tips during the years 1957 and 1958.

This is another of a rash of "tip" cases which have recently been presented to us for decision.

Tips constitute compensation for services rendered and, therefore, are includable in gross income under section 61(a) of the Internal Revenue Code of 1954. *Roberts* v. *Commissioner*, 176 F. 2d 221 (C.A. 9, 1949), affirming 10 T.C. 581 (1948); *Mendelson* v. *Commissioner*, 305 F. 2d 519 (C.A. 7, 1962), affirming a Memorandum Opinion of this Court, certiorari denied 371 U.S. 877 (1962). What is at issue then is the *amount* of tips received by the petitioner during 1957 and 1958.

Having determined that the petitioner did not have any records of her tip income, the Commissioner used his statutory authority under section 446, I.R.C. 1954, to make a computation of the amount of petitioner's tips for the years involved in accordance with a method which in his opinion did clearly reflect such income. *Dorothy L. Sutherland*, 32 T.C. 862 (1959). Under the circumstances we think the method used by respondent to determine the tip income was not arbitrary or capricious, as asserted by petitioner, but was the best and most realistic method that could have been used with the information available.

Where, as here, a taxpayer maintains no records, both the Commissioner and, in turn, this Court, have no other course than to reconstruct income in the most reasonable way possible. Such reconstructions are rarely, if ever, exact, nor are they required to be. It is sufficient if the reconstruction is reasonable in light of all surrounding facts and circumstances. The dilemma in which this petitioner finds herself, having kept no records for the years in issue, is of her own making. "Memory" records are hardly the type required by section 6001.

The petitioner has completely failed to sustain her burden of proof as to the amounts of tips received. Her self-serving testimony is worth very little. It is uncorroborated by any evidence showing that she correctly reported her tip income or that respondent's determination was erroneous. To assert, as she does, that she received average tips of 2.1 percent in 1957 and 2.7 percent in 1958 approaches the apex of absurdity. We find it impossible to believe that the caliber of customers frequenting Frenchy's which serves gourmet food like Australian Kangaroo, Deep South Racoon, and African Hippopotamus Steak, tip in the ridiculously low amounts claimed by petitioner. In these times of economic prosperity we think a reasonable inference can be drawn that customers of finer restaurants everywhere are now tipping more generously than they have in the past.

There were several inconsistencies in petitioner's testimony. She

described herself as just an "average" waitress; yet on cross-examination it was brought out that she was crowned the "Most Popular Waitress of the Year" for Wisconsin. She was experienced, competent, and certainly a well above average waitress. Even her testimony with respect to her standard of living and personal expenses cannot withstand close scrutiny.

Not only has petitioner totally failed in her burden of proof, but the respondent, on the other hand, has produced clear and convincing evidence corroborating his determination.

Since the petitioner has failed in her burden of proof largely because she did not keep any written records of the amounts of tips she actually received, she was "extremely negligent" and must bear the tax consquences. Therefore, we hold that the additions to tax under section 6653 (a) were proper.

*Decisions will be entered for the respondent.*