Anthony Marcello and Jeannine Marcello, [1] v. Commissioner. Marcello v. Commissioner
Docket Nos. 2652-62, 2396-63.
United States Tax Court
T.C. Memo 1964-301; 1964 Tax Ct. Memo LEXIS 36; 23 T.C.M. (CCH) 1864; T.C.M. (RIA) 64301; November 19, 1964
deQuincy V. Sutton, Dixie Towers, Meridian, Miss., for the petitioners, Robert S. Leight, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies and additions to the income taxes of petitioners: Additions to Tax
I.R.C. 1954, un-
Year
Deficiency
der Sec. 6653(a)
1958
$23,072.92
$1,153.65
1959
921.59
46.08
Respondent conceded at the trial *37 that petitioners did not understate their distributive share of income from the partnership, Southern Sightseeing Tours, on their income tax return for 1958. The parties agree that the amount of the medical expense deduction for 1958 to which petitioners are entitled must be computed in accordance with the limitations on such deduction as provided in section 213, Internal Revenue Code of 1954. The correct amount of the medical deduction can therefore be determined in the Rule 50 computation. The issues remaining for decision are: (1) Whether petitioner, Anthony Marcello, realized taxable gain in 1958 with respect to the sale of an undivided interest in inherited real estate and, if so, in what amount; (2) whether petitioner, Anthony Marcello, is entitled to deduct sales tax of $132 paid on the purchase of a new automobile; (3) whether petitioner, Anthony Marcello, is entitled to deductions totaling $929 for the year 1959 for automobile expenses and depreciation; (4) whether petitioner, Anthony Marcello, is entitled to a deduction of $300 for travel and entertainment expenses in the year 1959; (5) whether petitioner, Anthony Marcello, is entitled to deductions *38 totaling $2,038.39 for the year 1959 of expenses in connection with certain rental property, and (6) whether petitioners are liable for an addition to tax under the provisions of section 6653(a), Internal Revenue Code of 1954, for the years 1958 and 1959. Findings of Fact Certain documents were presented to the Court on oral stipulation of the parties and they are incorporated herein by this reference. Anthony and Jeannine Marcello are husband and wife, who reside at 2908 Clifford Drive, Metairie, Louisiana. They filed their joint Federal income tax returns for the taxable years 1958 and 1959 with the district director of internal revenue at New Orleans. Succession Property On July 1, 1955, Louisa Farrugia Marcello (hereinafter called Louisa), the widow of Joseph Marcello, Sr., and her nine children filed a petition in the District Court in and for the Parish of Jefferson, State of Louisiana, in connection with succession of the property of Joseph Marcello, Sr., deceased. That court ordered that Louisa be recognized as the surviving spouse in the community of the deceased, Joseph Marcello, Sr., entitled as such to the ownership of one-half or nine-eighteenths *39 of the property left by the deceased and to a usufruct interest in the other one-half or nine-eighteenths of the decedent's property. The court also ordered that the nine children be recognized as the sole heirs of their deceased father and that each child was entitled to the ownership of an individed one-eighteenth interest in the property left by the deceased subject to the usufruct vested in the mother. Louisa was born on February 6, 1893. Joseph Marcello, Sr., died in 1952. Included in the inheritance was a certain parcel of land, consisting of approximately 183 acres, designated as Tracts Nos. 9 and 10, Oakdale Subdivision, Section "C," Jefferson Parish, State of Louisiana (hereinafter called Tract C). Tract C was valued for estate purposes at $40,000. On December 26, 1958, Tract C was sold in nine separate parcels of approximately 20.333 acres each by Louisa and tne nine children. The purchasers were nine newly organized corporations in which the sellers had no interest. The names of the purchasing corporations were Gem, Inc., Pearl Lands, Inc., Amethyst Lands, Inc., Emerald Lands, Inc., Sapphire Lands, Inc., Garnet Lands, Inc., Topaz Lands, Inc., Ruby Lands, Inc., and Moonlight, *40 Inc. Each of these corporations, organized under the laws of the State of Louisiana, had been initially capitalized for $10,000. After the sales, James J. Culotta, a residential real estate developer and builder and owner of all the stock of the nine corporations, transferred 50 percent of the shares in each corporation to Joseph Connolly, who had participated in prior residential construction developments with Culotta. James J. Culotta transferred the 50 percent stock interests in the nine corporations to Joseph Connolly on the promise and understanding that Joseph Connolly would be responsible for raising the necessary financing for the proposed residential development of Tract C. No other consideration was exchanged. Another development project in which James J. Culotta and Joseph Connolly had joint interests about the time of the sale of Tract C to the nine corporations had failed. Each of the newly organized corporations gave, as total consideration, a negotiable promissory note, dated December 26, 1958, in the principal amount of $111,111.11. Each note was secured by special mortgage and vendor's lien in the appropriate deed of sale for the respective 20.333 acres conveyed *41 to such corporation. Each note was signed in the name of the appropriate corporation by "James J. Culotta, President." Each note provided that payments were to be made in ten annual installments of $11,111.11 commencing on December 26, 1959. Each note also provided that payments would be made by the respective corporation to the order of Bearer, $111,111.11, for value received, with interest payable monthly at the rate of 6 percent per annum until paid. The notes also included provisions as to the makers and endorsers' waiver of presentment for payment, demand notice of non-payment and protest. The notes further provide for non-waiver of rights by any delay in the exercise of such rights. The notes were in default from the due date of the first payment with respect to principal and interest. Except in one instance, which will be described hereinafter, no payment has been made on these notes. Each note also bears the personal endorsement of James J. Culotta. The acts or deeds of credit sale were signed for the grantors by Carlos J. Marcello, individually, and as agent and attorney-in-fact for Louisa, Vincent J. Marcello, Peter J. Marcello, Pascal J. Marcello, Joseph Marcello, *42 Jr., Anthony J. Marcello, Salvador J. Marcello, Mary M. Loria, and Rose M. Padalamenti. The power of attorney was dated December 22, 1958, and it appointed Carlos J. Marcello as the true and lawful agent and attorney-in-fact for the mother and the other eight children. Carlos J. Marcello was given the power to sell and deliver, with all legal warranties, Tract C to any person or persons, firms, or corporation or corporations, for such price and on such terms and conditions as he might deem fit and proper. Each of the deeds of sale includes a provision that the purchaser agrees, in the event the promissory note is not paid at maturity, that it shall be lawful for the vendor, or any holder or holders of the note, to cause the property to be seized and sold without demand or service of notice of demand for payment or of notice of procedure and without appraisement, to the highest bidder, payable in cash; and that the purchaser confesses judgment in favor of the vendor or any future holder or holders of the note. Each of the acts of sale includes the provision that partial release of any one or more of the lots into which the property will be subdivided will be granted by the vendors *43 upon payment towards the balance due on the above-described note of a sum proportionate to the ratio which the lot or lots sought to be released shall bear to the total number of lots into which the property is to be subdivided. Each act also provides that in order to facilitate the development of the property, or for the construction of streets and/or offsite improvements, the vendors will do all and whatsoever may be necessary in order to subordinate the vendor's lien and mortgage therein granted to any mortgage and/or building contract made by the purchaser for the purpose of construction financing of such development. On November 4, 1959, 10 months after the sale of Tract C, the nine notes were pledged on behalf of the Marcello family and their business associates as additional security for a $540,000 indebtedness. The notes were pledged as cumulative collateral for the loan. Other collateral consisted of (1) a first mortgage on certain motel property; (2) second and third mortgages on other property previously mortgaged to the same person for a prior loan; and (3) certain shares of stock of a motel corporation in which the Marcello family held interests. The pledges made no *44 attempt to segregate the security held between the loan of $540,000 and the previous loans made to the Marcello family or their business associates. On October 16, 1961, Gems, Inc., sold for $110,000 in cash two tracts of land, consisting of 5.72 acres and 6.53 acres out of its 20.333 acre tract, to the Roman Catholic Church of the Diocese of New Orleans. A mortgage release covering approximately 12 acres of the Gems, Inc., lands was executed on behalf of the Marcello heirs and a release of the pledge to the extent of $71,172.50 was obtained from the pledges of the Gems, Inc., note. On May 28, 1962, a Form 1041, United States Fiduciary Income Tax Return, in the name of Estate of Joseph Marcello, deceased, signed by Carlos Marcello, was filed for the year 1961 with the district director of internal revenue, New Orleans, Louisiana, reporting the following: Property sold 12-26-58 - Credit Deed, taxpayer
estate received no money in transaction
until 1961
Proceeds of sale received in 1961
$71,172.50
Less
Pro-rata valuation - Cost
12,500.00
Other Costs - Legal & Acctg.
2,000.00
Net Reportable
$56,672.50
Total acreage - approximately 183 acres
Market value - date of death $454 per acre
Total market value - date of death - $12,500
Estate elects to report on installment basis.
Property sold on Credit Deed 12-26-58 to cor-
porations listed below: Gems, Inc.
$111,111.11
Pearl Lands, Inc.
111,111.11
Amethyst Lands, Inc.
111,111.11
Emerald Lands, Inc.
111,111.11
Sapphire Lands, Inc.
111,111.11
Garnet Lands, Inc.
111,111.11
Topaz Lands, Inc.
111,111.11
Ruby Lands, Inc.
111,111.11
Moonlight, Inc.
111,111.11
$999,999.99
*45 On July 23, 1963, the deeds of sale were amended nunc pro tunc by the nine vendee corporations and Carlos J. Marcello acting as agent and attorney-in-fact for the Marcello family. In the amendments the parties declared that it was their intention at the time the nine sales were made that there be reserved to the vendors the oil, gas, and other mineral rights in the property conveyed in the nine sales, just as though the lands conveyed had been conveyed in one deed. The vendors and vendees declared that the reservation of mineral rights would not be effective as to the properties which were sold by Gems, Inc., to the Roman Catholic Church of the Diocese of New Orleans. Three qualified experts testified during the course of the hearing with regard to the valuation of Tract C - two on behalf of petitioner and one on behalf of respondent. Their respective conclusions as to the value of the land were based in part on a visual examination of the property, an examination of the official Parish records in regard to title and zoning, an examination of comparable properties and an examination of the sales of comparable property. The value of Tract C, based in part on the opinion of these *46 experts, is set forth in our ultimate findings. Anthony Marcello did not report of his interest in Tract C on his Federal income tax return for the year 1958. No election was made on the return pursuant to section 453, Internal Revenue Code of 1954, and the regulations relating thereto, to treat the gains on the sale of the properties under the installment method of accounting. In his notice of deficiency dated April 6, 1962, respondent made the following adjustment: It has been determined that you realized a net long-term capital gain from the sale or exchange of capital assets in the amount of $53,333.33, which you failed to take into account in the computation of your taxable income. It has been further determined that you are entitled to a deduction in the amount of $26,666.66 computed in accordance with the provisions of section 1202 of the Internal Revenue Code of 1954. Sales Tax on Automobile On December 24, 1958, Anthony Marcello (hereinafter called petitioner) purchased a 1959 Ford Thunderbird automobile from Metairie Motor Sales, Inc., for $4,538.50, which included Louisiana sales tax of $132. The sum of $1,877.50 *47 was allowed on the trade-in of a 1957 Oldsmobile and the petitioner paid the balance of $2,661 by check. Petitioner deducted in his 1959 tax return the $132 for sales tax paid. Respondent disallowed the deduction in his notice of deficiency dated March 18, 1963. Automobile Expenses During 1959 petitioner was manager of the Town & Country Motel and a partner in Southern Sightseeing Tours. He used his 1959 Ford automobile in his work for both businesses. Since it was the only automobile owned by petitioner and his family in 1959, he also used it to commute to work and for other personal purposes. In his income tax return for 1959 petitioner claimed the following deductions for automobile expenses, based on a 50 percent use for business: Depreciation (4 year life)
$493.75
Gas and Oil
225.00
Insurance
90.25
Miscellaneous
120.00
Petitioner estimated his oil and gas expenses and the cost of miscellaneous repairs. His expenditures were out-of-pocket. He was not reimbursed. There is no evidence regarding the insurance. In his notice of deficiency respondent disallowed all of the claimed automobile expense. Travel and Entertainment Expenses Although petitioner *48 claimed a deduction of $300 on his 1959 income tax return for travel and entertainment expenses, he offered no evidence to show the amounts or business purpose. In his notice of deficiency respondent disallowed the claimed expenses. Expenses Relating to Old and New Southport Properties In his income tax return for 1959 petitioner reported rental income in the amount of $3,900 from property known as New Southport, 1300 Monticello Avenue, New Orleans, Louisiana, and no rental income from property known as Old Southport. Petitioner claimed the following expenses in connection with the Old and New Southport properties: Depreciation
Old Southport
$1,125.00
New Southport
256.24
Miscellaneous
37.27
Taxes
225.72
Insurance
394.16 Respondent disallowed all expenses of the Old and New Southport properties in his notice of deficiency. During 1959 petitioner owned a 25 percent interest in New Southport and a 12 1/2 percent interest in Old Southport. The claimed amounts for depreciation represent petitioner's share of total depreciation of $9,000. The claimed amounts for taxes and insurance, subject to slight variations, represent petitioner's share of total taxes *49 ($752.40) and insurance ($1,313.86) paid. No evidence was introduced regarding the miscellaneous expense. Medical Expenses During 1959 the petitioners sustained and paid medical expenses as follows: Medicine
$ 50.00
Doctors & Hospitals
663.50
Ultimate Findings 1. Petitioner's undivided interest in the inherited property was sold in 1958. 2. The fair market value of the land known as Tract C on December 26, 1958, was $1,800 per acre, or a total value of $329,395 for 183 acres. 3. The fair market value of each of the nine negotiable notes of the nine vendee corporations on December 26, 1958, was equal to 33 1/3 percent of its stated face value. 4. The amount of $132 paid by petitioner as sales tax on a new Ford automobile is deductible in the taxable year 1958. 5. The amount of $485 is allowed as depreciation on the Ford automobile in the taxable year 1959. The amount of $200 expended by petitioner for gas and oil and the amount of $100 for miscellaneous repairs to the automobile constituted ordinary and necessary business expenses for the taxable year 1959. Petitioner failed to establish any amount for insurance. 6. Petitioner has failed to establish *50 any amount for travel and entertainment expenses for 1959. 7. The amounts of $1,125 and $256.24 are allowed for depreciation on the Old and New Southport properties for the taxable year 1959 as petitioner's share of total depreciation claimed. The amount of $188.10 expended by petitioner for his share of the Jefferson Parish real estate taxes on the New Southport property constituted an ordinary and necessary business expense. The amount of $328.46 expended by petitioner for his share of the insurance on the Old and New Southport properties constituted ordinary and necessary business expenses. Petitioner has failed to establish the miscellaneous expense of $37.27. 8. Petitioner's failure to report his allocable share of the gain realized on the inherited property in 1958 was not due to negligence. 9. Petitioner's failure to keep adequate books and records of his business expenditures and the overstatement of the deductions claimed in his tax return for 1959 was due to negligence. Opinion Issue 1 - Succession Property This issue is identical to Issue 2 (Succession Property) decided in the case of Joseph Marcello, Jr., 43 T.C. - (Nov. 13, 1964), wherein we held that the *51 taxpayer realized a long-term capital gain in 1958 on the sale of his interest in the fair market value of certain notes, taking into account the adjusted basis of the property and the value of the mother's usufruct interest. We reach the same result here. The amount of the taxable gain can be determined in the Rule 50 computation. Issue 2 - Sales Tax on Automobile We conclude, and have found as a fact, that petitioner paid Louisiana sales tax of $132 on the purchase of a 1959 Ford automobile ondecember 24, 1958. Although the petitioner claimed such amount as a deduction in his Federal income tax return for 1959, it is properly allowable in 1958, the year in which the petitioner, who reports on the cash and calendar year basis of accounting, actually paid it. Since we have the taxable year 1958 before us for consideration in this proceeding, the deduction of $132 should be allowed in Rule 50 computation for that year. Issue 3 - Automobile Expenses We conclude, and have found as a fact, that petitioner used his Ford automobile during the year 1959 for both business and personal purposes. We are satisfied that petitioner properly allocated the costs of operating the automobile *52 on a basis of 50 percent for business and 50 percent for personal use. We have assigned a $440 salvage value to the automobile and accept petitioner's 4-year useful life for computing depreciation. Therefore, we hold that petitioner is entitled to a depreciation deduction of $485. Weighing against petitioner for failure of more precise proof, and applying the Cohan rule 39 F. 2d 540, 544), we have found that gas and oil expenses should be allowed to the extent of $200 and miscellaneous repairs to the extent of $100 as ordinary and necessary business expenses. Since petitioner offered no evidence as to insurance ($90.25), he has failed to meet his burden of proof on such item. Consequently, we disallow it. Issue 4 - Travel and Entertainment Expenses Petitioner offered no evidence with respect to the amounts or business purpose of any of the claimed travel and entertainment expenses. He has failed to meet his burden of proof. Therefore, we sustain respondent's disallowance. Issue 5 - Expenses Relating to Old and New Southport Properties We conclude, and have found as a fact, that petitioner owned a 25 percent interest in New Southport and a 12 1/2 percent interest *53 in Old Southport, both being rental property. We are satisfied that petitioner correctly reported, and should be allowed, his proportionate share of the depreciation claimed on such properties, i.e., in the respective amounts of $1,125 and $256.24 on Old and New Southport. In addition, we hold that petitioner is entitled to deduct $188.10 for real estate taxes paid on the New Southport property and $328.46 for insurance on both properties. Such amounts constitute ordinary and necessary business expenses. Since petitioner offered no proof on the miscellaneous expense of $37.27, the respondent's disallowance of that item is sustained. Issue 6 - Section 6653(a) Addition to Tax Standing alone, the failure of petitioner to report the gain realized in 1958 from the sale of his interest in the inherited property was not due to negligence. Whether petitioner realized such a gain in 1958 involves a rather complex legal determination on which there can be an honest difference of opinion. Accordingly, we sustain petitioner on this issue for the taxable year 1958. For 1959 the petitioner overstated certain unreimbursed business expenses. We think this was due to negligence because petitioner *54 failed to maintain records of such expenses. Cf. Carroll F. Schroeder, 40 T.C. 30 (1963). Therefore, we sustain respondent on this issue for the taxable year 1959. To reflect the adjustments contained herein, Decisions in both dockets will be entered under Rule 50. Footnotes
1. This case is hereby severed from the previously consolidated cases of Carlos and Jacqueline Marcello, Docket No. 93913; Vincent and Sadie Marcello, Docket No. 2653-62; Anthony and Jeannine Marcello, Docket Nos. 2652-62 and 2396-63; Salvador J. Marcello, Docket Nos. 2654-62 and 2380-63; and Joseph, Jr., and Anastasia Marcello, Docket No. 2650-62.↩