Thomas Soriano and Catherine Soriano v. Commissioner.
Soriano v. Commissioner
Docket No. 7718-70.
United States Tax Court
T.C. Memo 1972-93; 1972 Tax Ct. Memo LEXIS 167; 31 T.C.M. (CCH) 368; T.C.M. (RIA) 72093; April 24, 1972, Filed. Thomas Soriano, pro se, 632 Ridge St., Newark, N. J. Richard Baron, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency of $1,081.55 in petitioners' income tax for the year 1967 and an addition to tax under section 6653(a), Internal Revenue Code of 1954, in the amount of $54.08. Two issues are presented for decision: (1) Whether Catherine Soriano received additional tip income while working as a waitress during 1967 which petitioners failed to report on their joint Federal income tax return for that year; and (2) whether petitioners are liable for the addition to tax for negligence in failing to maintain adequate and accurate records of Catherine Soriano's tip income. Findings of Fact Some of the facts have *168 been stipulated and are so found. Thomas and Catherine Soriano (herein called petitioners) are husband and wife who resided in Newark, New Jersey, at the time they filed their petition in this case. They filed their 1967 joint Federal income tax return with the district director of internal revenue at Newark, New Jersey. Catherine Soriano (herein called Catherine) was employed during 1967 as a waitress by Claremont Diner, Inc., Verona, New Jersey. The Claremont Diner is a combination diner-restaurant with three separate dining rooms. It is an excellent and popular family-type restaurant with luncheon prices starting at $1.95 and dinner prices ranging from $5 to $9.50, and accommodates approximately 400 persons. During peak hours lines form around the restaurant as patrons wait to be admitted. The luncheon clientele consists mainly of businessmen. Families account for most of the dinner trade. Approximately 95 percent of the restaurant's patrons are regular customers. In 1967 the Claremont Diner was open for business 24 hours per day every day of the year. Catherine worked from 12 noon to 9 p.m., 6 days per week, including Sunday which was the busiest day of each week. She also *169 worked overtime when needed. Catherine worked solely as a waitress in the main dining room and never acted as a hostess, cocktail waitress or assisted at catered affairs. Her station consisted of two tables with four seats each, located in the main dining room. She worked at this station exclusively, in the restaurant's most desirable dining room, throughout 1967. She is regarded as a good waitress, has worked at the Claremont Diner for several years, and has her own following of customers who request to be served by her. During 1967 Catherine worked a total of 222 days at the Claremont Diner. This included 1822 regular hours for which she received $.805 per hour and 149 overtime hours for which she was paid $1.21 per hour. To enable her employer to make the necessary computations for Federal withholding taxes and contributions to social security, Catherine reported to the Claremont Diner that she received a total of $500.25 in tip income in 1967. Out of her tips, Catherine paid busboys $1.50 per day or a total of $333 during the year in issue. She was also required to reimburse her employer for any mistakes made on her sales checks and for any bar checks she failed to present to *170 her patrons. In connection with an income tax audit of Catherine's employer for its fiscal years ended September 30, 1967, and September 30, 1968, respondent determined that the waiters and waitresses employed at the Claremont Diner only reported tip income in an amount slightly in excess of 1 percent of the restaurant's "tipable" sales of approximately $1,430,000 for the calendar year 1967. Due to the unavilability of records of the actual amount of food and liquor served by each waiter or waitress in 1967, respondent computed their per hour "tip wages" by using the following formula: Total Tipable Sales X Average Tip by Patron (15%) Total Hours Worked by all Waiters and Waitresses. Respondent then took the figure derived by utilization of this formula, which was $2.96, and multiplied it by the 1,971 hours Catherine worked to arrive at her total tip income for 1967. To verify the average percentage tip per patron used in the above formula respondent analyzed all of the charged sales for December 1968, which included charged tips. There were 648 such transactions and charged tips averaged out to 14 percent of 370 the charged sales. Based on the foregoing computations, respondent *171 determined that Catherine received total tips of $5,850.32 in 1967, of which amount $5,350.07 was not reported by petitioners on their 1967 joint Federal income tax return. Opinion At issue in this proceeding is the amount of tip income received by Catherine Soriano in 1967. Petitioners assert that Catherine accurately reported her tip income and argue that respondent's reconstruction of such income is based upon an arbitrary series of mathematical computations. Respondent, on the other hand, takes the position that petitioners have failed to maintain adequate records [1] of this income and under the statutory authority of section 446 [2] has computed Catherine's tip income for 1967 by a formula which in his opinion clearly reflects her income. In view of the limited information available, respondent's use of this formula to reconstruct Catherine's tip income was neither unreasonable nor arbitrary and was under the circumstances the most appropriate method that could be used. Mendelson v. Commissioner, 305 F. 2d 519 (C.A. 7, 1962), affirming a Memorandum Opinion of this Court, certiorari denied 371 U.S. 877 (1962), and Carroll F. Schroeder, 40 T.C. 30 (1963). *172 However, we think a reduction in the percentage figure for tips used by respondent in the computation is appropriate since it has not been supported by respondent's cross check of charged tips or the testimony of respondent's witness, Morris *173 Bauman, president of Claremont Diner, Inc. Mr. Bauman, who is very familiar with the earnings of the employees at the Claremont Diner, estimated that the average tip left there was between 10 and 12 percent. We think this estimate is more accurate than a computation of just one month's charged tips. Consequently, we conclude that for the purpose of reconstructing Catherine's tip income for 1967, a 12 percent tip figure should be used. The resultant tip income so computed should then be reduced by $333 for payments made by Catherine to her busboys during the year in issue. Petitioners also request that an allowance be made for those sums Catherine was required to pay over to her employer for mistakes made on her customer's bills. Unfortunately, we are unable to provide any relief in connection with these payments since petitioners have offered no evidence whatsoever to indicate the amounts or frequency of these payments or that Catherine was actually called upon to make such payments in 1967. Finally, with respect to the addition to tax imposed by section 6653(a), [3] it is clear that Catherine failed to keep adequate and accurate records of her tip income in 1967. Since this was *174 due to her negligence or intentional disregard of the applicable rules and regulations and has resulted in an underpayment of tax, the petitioners are liable for the addition to tax determined by respondent. Carroll F. Schroeder, supra; Barry Meneguzzo, 43 T.C. 824 (1965), Meyers v. Commissioner, 435 F. 2d 171 (C.A. 3, 1970), affirming a Memorandum Opinion of this Court, certiorari denied 401 U.S. 957 (1971). Accordingly, Decision will be entered under Rule 50. *** kim ok *** 371 Footnotes
1. Only Thomas Soriano appeared as a witness for petitioners in this case. At the trial he placed in evidence a calendar which he stated was maintained by Catherine in 1967. He testified that she made various notations on the calendar and that he on occasion saw her make these entries. He was, however, unable to say whether these were made contemporaneously or that what he witnessed were necessarily entries of tip income. From observation of the calendar itself and the testimony with respect to it, we cannot conclude that it furnishes a reliable record of the tips received by Catherine in 1967. ↩
2. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. * * * (b) Exceptions. - If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.↩
3. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due too negligence or intentional disregard of rules and regulations (but without intent to defraud) there shall be added to the tax an amount equal to 5 percent of the underpayment.↩