KAISRI WILLIAMS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Williams v. Commissioner
Docket Nos. 3150-82, 3151-82, 3152-82, 3153-82.
United States Tax Court
T.C. Memo 1984-640; 1984 Tax Ct. Memo LEXIS 33; 49 T.C.M. (CCH) 272; T.C.M. (RIA) 84640; December 10, 1984. Alan R. Harter, for the petitioners. Gail K. Gibson, for the respondent. SHIELDS MEMORANDUM *34 FINDINGS OF FACT AND OPINION SHIELDS, Judge: In these consolidated cases respondent determined that there were deficiencies in income tax and additions to tax due from petitioners as follows: Addition to Tax
Petitioner(s)
Year
Deficiency
Sec. 6653(a) [2]
Kaisri Williams
1978
$1,709.00
$85.45
Chuen H. Chen
1978
1,370.00
[3] 68.50
Calvin T. Luker
1978
2,219.00
110.95
& Maggie Luker
George N. Jenkins
1978
2,115.00
115.75
& Yuriko Jenkins
The issues are (1) whether respondent correctly determined the tip income received by petitioners during 1978; and (2) whether petitioners in each case are liable for the addition to tax under section 6653(a) for negligence or the intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached *35 exhibits are incorporated herein by reference. All of the petitioners resided in Las Vegas, Nevada, at the time their petitions were filed. The male petitioners are parties solely because they filed joint income tax returns with their wives. Consequently, the words petitioner and petitioners as used hereinafter shall refer only to the female petitioners. During 1978, petitioners were waitresses in the Benihana Village, a restaurant located in the Hilton Hotel in Las Vegas, Nevada. The restaurant specialized in oriental foods and was divided into four separate eating areas. Each area had a specialty by which they were known such as Tempura, Robata, Hibachi, and Sukiyaki. At the beginning of the year, all four petitioners were assigned to the Sukiyaki area which is located on the upper level of the restaurant. Their primary duty was to serve food, but occasionally they were required to cook. When business was slow, petitioners were permitted to leave. The Sukiyaki portion of the restaurant was closed in June of 1978 and the employment of all four petitioners was temporarily interrupted. Upon their return, petitioner Jenkins was assigned to the Robata area of the *36 restaurant and petitioners Williams, Chen, and Luker were assigned to the Hibachi area. The Hibachi portion was divided into two sections, one being on a lower level, and the other on the upper level. All of the petitioners were assigned to the upper level of the restaurant where they were assigned only "overflow" customers. At the end of each shift, petitioners and any other waitresses working in the same area, (1) would "pool" their tips, (2) pay a fixed percentage of the total to bartenders, busboys, captains, and cashiers, and (3) divide the balance of the tips on a fifty-fifty basis with the cooks. The hours, wages, and tips reported on their 1978 returns were as follows: Tips Reported on
Petitioner
Total Hours
Total Wages
Tax Return
Williams
1,411  $4,824.22
$1,200.00
Chen
1,411  4,775.04
1,600.00
Luker
1,308  4,415.45
306.00
Jenkins
1,072.5
3,861.04
The gross sales of the restaurant in 1978 were $3,167,098; charge sales accounted for 54 percent of the gross. The tips paid by customers on charge sales were reflected in the records of the restaurant. The restaurant had no record of the tips paid on cash *37 sales. The tip percentage on charge sales was 14 percent. Petitioners kept no record of their 1978 tip income. Respondent determined the tip income of petitioners by using the charge sale records of the restaurant. From these records respondent prepared a random sample of 28 days which included one sample day for each week in each quarter. In this manner respondent was able to determine the average tip rate by charge sales made during 1978 in each of the three areas of the restaurant other than the Sukiyaki area which was not open for the entire year. The average rates varied from area to area but respondent selected the lowest rate, and by allowing a "stiff" rate of 15 percent for customers who left no tip and by making adjustments for payments made by waitresses to captains, busboys, bartenders, cashiers, and cooks, determined that the hourly tip rate for Hibachi waitresses such as petitioners Williams, Chen, and Luker was $6.63, and that the hourly tip rate for Robata waitresses such as Jenkins was $4.89. Respondent also used the hourly tip rates determined above for the period during which the petitioners worked in the Sukiyaki area. OPINION (1) Income *38 from Tips
Tips are includable in gross income as compensation for services rendered. Section 61(a); section 1.61-2(a)(1), Income Tax Regs.; Killoran v. Commissioner,709 F.2d 31 (9th Cir. 1983), affg. a Memorandum Opinion of this Court; Schroeder v. Commissioner,40 T.C. 30, 33 (1963). Taxpayers receiving tip income are required to keep records sufficient to enable respondent to determine their correct tax liability. Section 6001. Petitioners admittedly did not maintain any record of their tip income for 1978. Respondent, therefore, is authorized by section 446 to compute their tip income in accordance with any method which, in his opinion, clearly reflects such income. Sutherland v. Commissioner,32 T.C. 862 (1959). Petitioners have the burden of proving that the determination made by respondent is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [4]
Petitioners contend that respondent's calculation of the hourly tip rate is erroneous in two respects. First, they argue that the *39 Sukiyaki area in which they worked for part of the year had less business than the other restaurants in the Benihana Village. There is some evidence in the record that business was slower in the Sukiyaki area, but petitioners were permitted to leave when this occurred. Since respondent's determination is based on actual hours worked, we are satisfied that the variation in the business done by the different areas of the restaurant had very little, if any, effect upon the hourly tip rate. Petitioners next argue that respondent's calculation is inaccurate because it is based upon charge sales only. Since petitioner Chen testified in a credible and believable manner that from her experience cash sale customers typically left smaller tips than charge customers, and since the record contains no statistical evidence concerning the difference between the tip percentages of charge customers as compared to cash customers, we conclude that tip percentages on charge sales at the Benihana Village tended to exceed tip percentages on cash sales. Therefore, from the record as a whole, we find that the tip percentage of cash sales in this case should be limited to 12 percent instead *40 of the 14 percent used by respondent. (2) Addition to Tax
Petitioners admittedly failed to maintain accurate records of their tip income as required by section 6001 and the regulations issued thereunder and the record contains no evidence which tends to justify their failure to do so. Therefore, respondent's determination that the addition to tax provided by section 6653(a) is due from each petitioner is sustained. Meneguzzo v. Commissioner,43 T.C. 824, 836 (1965). To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Chuen H. Chen, Docket No. 3151-82; Calvin T. and Maggie Luker, Docket No. 3152-82; George H. and Yuriko Jenkins, Docket No. 3153-82.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. ↩
3. An addition under section 6651(a)(1) was also determined against Chuen H. Chen. However, no issue was raised with respect to this addition in the petition.↩
4. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩