JAMES B. BIDDLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Biddle v. Commissioner
Docket Nos. 9491-86, 3544-87
United States Tax Court
T.C. Memo 1989-397; 1989 Tax Ct. Memo LEXIS 433; 57 T.C.M. (CCH) 1146; T.C.M. (RIA) 89397; July 31, 1989
Daniel J. Saul, for the petitioner. Steven Z. Ettinger, and Guy G. LaVignera, for the respondent. WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION WOLFE, Special Trial Judge: This case was heard pursuant to section 7443A of the Internal Revenue Code and Rule 180 et seq. [1]
Respondent determined the following deficiencies in, and additions to, petitioner's Federal income tax: Additions to Tax
Section
Section
Section
Section
Year
Deficiency
6651(a)
6653(a)(1)
6653(a)(2)
6654
1982
$ 2,384.00
$  958.44
$ 119.20
*
$ 339.48
1983
2,972.00
-
148.60
*
-
*435 The issues for decision are: (1) whether petitioner understated his tip income for 1982 and 1983; (2) whether petitioner is liable for an addition to tax under section 6651(a) for 1982; (3) whether petitioner is liable for additions to tax under section 6653(a) for 1982 and 1983; and (4) whether petitioner is liable for an addition to tax under section 6654 for 1982. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in New Jersey when he filed the petitions in these cases. During 1982 and 1983, petitioner was employed as a "public bartender" in the Rendezvous Lounge (Rendezvous) at Resorts International Hotel (Resorts) in Atlantic City, New Jersey. As a public bartender at the Rendezvous, petitioner prepared and served beer, wine and various alcoholic and non-alcoholic beverages for patrons at the bar. Petitioner generally worked an eight hour shift from 11:00 p.m. to 7:00 a.m. or from 6:00 p.m. to 2:00 a.m. During each eight hour shift petitioner usually took a 30 minute meal break. The Rendezvous is open 24 hours *436 a day, every day of the year. Live musical entertainment is provided in the Rendezvous daily from approximately 12:00 noon to 4:00 a.m. on the weekdays and from 12:00 noon to 6:00 a.m. on the weekends. Seating capacity in the Rendezvous is between 350 and 400 people. Behind the main area of the Rendezvous is the public bar (bar) which is served by public bartenders including petitioner. The bar is in the shape of a long narrow horseshoe with 12 to 16 bar stools along the front side and also along the back side and eight to ten bar stools along the closed end. The open end is used by employees for ingress and egress. Normally, the bar is staffed by three bartenders who are stationed at the front side, the back side or the closed end. Generally, each bartender regularly works the same station. Petitioner's usual station was the back side. On holidays and other particularly busy days, one or two additional bartenders were assigned to the bar. In addition to the public bartenders, a "breaker" was assigned to each eight hour shift. The breaker works throughout Resorts and his duties include filling in for public bartenders who are taking their 30 minute meal break. Any tips *437 left by customers while the breaker is filling in for the public bartenders are kept by the breaker. Except for 13 weekly tip declaration forms which were filled out by petitioner for 1983, petitioner kept no records, diaries or logs of his tip income for 1982 or 1983. Petitioner filed his 1982 Federal income tax return on April 14, 1986, nearly three years after the return due date of April 15, 1983. He filed his 1983 Federal income tax return timely. Petitioner reported tip income on his returns as follows: Tip
Year
Income
1982
$ 5,850.00
1983
1,648.00
Although petitioner worked as a bartender throughout the entire year 1983, on his tax return he reported as tip income only $ 1,648.00. This amount was the total on the 13 weekly tip declaration forms kept by petitioner in 1983. At trial and on brief, petitioner stated that he received $ 6,227.00 tip income for 1983. Using a formula developed for the purpose of reconstructing tip income, respondent recomputed petitioner's tip income in the following amounts: Tip
Year
Income
1982
$ 12,050.50
1983
13,255.83
To reconstruct petitioner's tip income for 1982 and 1983, *438 respondent combined data from Resorts' records with statistical sampling plans and information obtained by interviewing Resorts' employees. Respondent was able to estimate tips received for each hour worked. The estimated tips received per hour worked then were multiplied by the total hours worked by petitioner to arrive at the estimated total tip income. Revenue Agent Richard Spiker was substantially involved in the gathering of the data used to determine petitioner's tip income. Richard Spiker testified as to the source of the data, the formula used in arriving at an estimate of tips received for each hour worked and how he estimated total tip income for petitioner in 1982 and 1983. Respondent's formula for computing tip income begins with total sales, net of taxes, of the Rendezvous for 1982 and 1983 which were obtained from Resorts' income journals. Server sales, as opposed to public bartender sales, are subtracted from total sales to determine the amount of adjusted sales. Server sales percentages for 1982 and 1983 were computed by a statistical sampling plan utilizing Resorts' business records. The adjusted sales amount is further reduced by non-tipped sales to arrive *439 at net public bartender sales on which some type of tip was received. A 38 percent "stiff rate" was used and computed as a result of 47 interviews of employees at various lounges, including the Rendezvous, in different casinos in Atlantic City. The public bartenders' net sales were separated into charge sales and non-charge sales (i.e., cash sales and complimentary drinks). The non-charge sales percentages for 1982 and 1983 were computed by a statistical sampling plan utilizing Resorts' business records. Charge sales (public bartender net sales less public bartender non-charge sales) are multiplied by a charge sales tip percentage which results in total tips from charge sales. This percentage was derived by use of a statistical sampling plan based on Resorts' business records. Respondent also applied a statistically derived tip percentage to non-charge sales to compute total tips from non-charge sales. Total tips from charge sales plus total tips from non-charge sales equal gross tips. Gross tips, reduced by payouts made by the public bartenders to the bar porters, equal adjusted tips. The payout percentages for 1982 and 1983 were derived through interviews with Resorts' employees. *440 Adjusted tips, divided by total public bartender hours, equals the tip rate per hour. The total public bartender hours were computed from Resorts' business records. The tip rate per hour, less a rate reduction factor of 5 percent, which is compensation for sampling variability, equals a net tip rate per hour for 1982 and for 1983. The following chart demonstrates the application of the formula to petitioner's situation: 1982
1983
1. Total Outlet Sales
$ 3,850,743.04 $ 3,574,034.41 (Net of Taxes)
2. Less Server Sales
2,102,890.77 1,874,938.45 (54.61% and 52.46%)
3. Adjusted Sales
1,747,852.27 1,699,095.96 4. Less Non-Tipped Sales (38%)
664,183.86 645,656.46 5. Equals Net Non-Server
1,083,668.41 1,053,439.50 Sales
6. Less Non-Charge Sales
910,389.83 862,450.92 (84.01% and 81.87%)
7. Equals Charge Sales
173,278.58 190,988.58 8. Times Charge Sales Tip
21.20%
21.70%
9. Equals Tips From Charge
36,735.06 41,444.52 Sales
10. Non-Charge Sales
910,389.83 862,450.92 11. Times Non-Charge Tip
19.20%
19.70%
Percentage
12. Equals Tips From Non-
174,794.85 169,902.83 Charge sales
13. Total Gross Tips
211,529.91 211,347.35 (Line 9 plus Line 12)
14. Less Payout (18.13%)
38,350.37 38,317.28 15. Equals Adjusted Tips
173,179.54 173,030.07 16. Divided by Total
23,512.41 20,674.90 Non Server Hours
17. Equals Tip Rate Per Hour
7.37 8.36 18. Less Rate Reduction Factor 5%
.37 .42 19. Net Tip Rate Per Hour
7.00 7.94 *441 The net tip rate per hour determined by respondent for 1983 is $ 7.94. Recomputation indicates a net rate of $ 7.95, but the lower rate determined by respondent, which is more favorable to petitioner, has been employed in these calculations. From payroll records obtained from Resorts, respondent determined that petitioner worked a total of 1,721.5 hours in 1982 and 1,669.5 hours in 1983. The number of hours worked in 1982 and 1983 multiplied by the net tip rate per hour for 1982 and 1983 results in tip income in 1982 of $ 12,050.50 (1,721.5 hours at $ 7.00 net tip per hour) and in 1983 of $ 13,255.83 (1,669.5 hours at $ 7.94 net tip per hour). OPINION The first issue here is whether petitioner understated his tip income for 1982 and 1983. Tips received are includable in gross income as compensation for services rendered. Sec. 61(a); sec. 1.61-2(a)(1), Income Tax Regs.; Killoran v. Commissioner, 709 F.2d 31 (9th Cir. 1983), affg. a Memorandum Opinion of this Court; Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). All taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. *442 Sec. 6001; Meneguzzo v. Commissioner , 43 T.C. 824, 831-832 (1965). When a taxpayer receives income from tips on a daily basis, the required records include an accurate and contemporaneous diary of such income. Sec. 1.6001-1(a), Income Tax Regs; Bruno v. Commissioner, T.C. Memo 1985-168. Such records must be retained by the taxpayer "so long as the contents thereof may become material in the administration of any internal revenue law." Sec. 1.6001-1(e), Income Tax Regs.
If a taxpayer keeps no records of tip income, or it appears the records do not reflect tip income clearly, respondent may compute income under such method as, in his opinion, does clearly reflect income. Sec. 446(b); Meneguzzo v. Commissioner, supra at 831. Petitioner kept no records of his tip income for 1982 and presented 13 tip declaration sheets of questionable accuracy, which represent only 13 weeks in 1983. Because of these circumstances, respondent reconstructed petitioner's tip income for 1982 and 1983. Where reconstruction of a taxpayer's income is necessary, as it is here, respondent has great latitude in the method used to make the reconstruction. *443 Catalano v. Commissioner, 81 T.C. 8, 13 (1983) affd. without published opinion sub nom. Knoll v. Commissioner, 735 F.2d 1370 (9th Cir. 1984). Respondent's reconstruction of income must be "reasonable in light of all surrounding facts and circumstances." Schroeder v. Commissioner, supra at 33. This Court and other courts have accepted the use of formulas in the reconstruction of tip income. Cracchiola v. Commissioner, 643 F.2d 1383 (9th Cir. 1981), affg. a Memorandum Opinion of this Court; Meneguzzo v. Commissioner, supra.
Respondent's determination of petitioner's tip income is presumed correct and petitioner has the burden of proving it erroneous. Rule 142(a). Richard Spiker, a revenue agent who worked on the Atlantic City project and on petitioner's case, testified in detail about how he gathered the data for the formula and the actual application of the formula. Respondent also presented the expert testimony of Doyle Harris, a well qualified and experienced mathematical statistician. Mr. Harris testified extensively on the reasonableness and methodology of each level of the formula *444 employed by respondent to reconstruct petitioner's tip income. Mr. Harris' testimony and the related expert witness report he submitted to the Court are credible and have been afforded substantial weight in the resolution of this issue. His overall evaluation of the formula used to reconstruct petitioner's tip income is that it was logical, the sampling methods were sound and the samples sufficient to yield reasonable estimates. None of Mr. Harris' findings were rebutted successfully by petitioner at trial or on brief. Petitioner asserts the following errors in respondent's formula: (1) that erroneous assumptions were made involving cashier numbers; (2) that respondent failed to use representative data; (3) that respondent erroneously estimated the total bartender hours for 1983; (4) that respondent erroneously calculated petitioner's actual hours of work subject to tipping; (5) that respondent used irrelevant and unreliable data; (6) that respondent failed to acknowledge disparities; (7) that respondent failed to account for error due to sampling; and (8) that respondent was generally careless. Petitioner has failed to prove the truth of the assertions set forth above or to demonstrate *445 their effect upon respondent's determinations. Petitioner's testimony on his own behalf was unconvincing. Kenneth J. Destefano, a senior labor analyst for Resorts, testified on behalf of petitioner. Mr. Destefano was not employed by Resorts during 1982 or 1983. His testimony consisted largely of a presentation of incomplete records and was of modest value. Jacob Smith, a bartender at Resorts, also testified on behalf of petitioner. Mr. Smith's testimony was inconsistent and not credible. Many of petitioner's arguments on brief are based in part on supposed facts that are not in the record. Petitioner's brief failed to set forth proposed findings of fact and made no references, in any systematic way, to the transcript or other materials on which he relied, as is required under Rule 151. Petitioner plainly has failed to carry his burden of proof. Based on the record in this case, specifically the extensive testimony of respondent's witnesses and related exhibits and petitioner's failure to present any convincing evidence that would raise questions as to the reasonableness of respondent's formula or the application of the formula under the facts and circumstances of the present *446 situation, we hold that respondent's reconstruction of petitioner's tip income is reasonable and substantially correct. Accordingly, we find that petitioner received tip income in 1982 of $ 12,050.50 and in 1983 of $ 13,255.83. Respondent determined additions to tax under section 6651, section 6653(a), and section 6654. Petitioner bears the burden of proving that the additions to tax do not apply. Rule 142(a). Section 6651(a)(1) provides for an addition to tax when a taxpayer fails to file a return timely, unless such failure is due to reasonable cause and is not due to willful neglect. Petitioner filed his 1982 Federal income tax return nearly three years after the return due date. He has not shown that his failure to file the return timely was due to reasonable cause and petitioner's counsel conceded this issue on brief. Petitioner is liable for an addition to tax under section 6651(a) for 1982, as determined by respondent. Respondent also determined additions to tax under section 6653(a) for negligence or intentional disregard of the rules and regulations in 1982 and 1983. Petitioner admittedly failed to make and retain an accurate record of his tip income for 1982 *447 or 1983 as required by section 6001 and has offered no evidence to justify his failure to do so. Consequently, respondent's determinations with respect to the additions to tax provided by section 6653(a) are sustained. Meneguzzo v. Commissioner, supra at 836. The final issue for our decision is whether petitioner is liable for an addition to tax under section 6654 for failure to pay estimated tax for the 1982 taxable year. Where required prepayments of tax have not been made at the appropriate time, imposition of the section 6654 addition to tax is mandatory unless one of the statutory exceptions applies. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). Since petitioner did not introduce evidence on this issue, we sustain respondent's determination of the addition to tax under section 6654. Reaver v. Commissioner, 42 T.C. 72, 83 (1964). Decisions will be entered under Rule 155. Footnotes
1. Docket Nos. 9491-86 and 3544-87 have been consolidated for trial, briefing and opinion and sometimes are referred to hereafter as a single case. All section references are to the Internal Revenue Code, as amended and in effect for the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
*. To be determined↩