JUDITH LEE KRAUSE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Krause v. Commissioner
Docket No. 29958-88.
United States Tax Court
T.C. Memo 1990-631; 1990 Tax Ct. Memo LEXIS 701; 60 T.C.M. (CCH) 1430; T.C.M. (RIA) 90631; December 13, 1990, Filed *701 An appropriate order will be issued.
Decision will be entered for the respondent.
Judith Lee Krause, pro se. James C. Fee, Jr. and David A. Breen, for the respondent. POWELL, Special Trial Judge. POWELL
*2061 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioner's 1985 Federal income tax and an addition to tax under section 6653(a)(1)[1] in the respective amounts of $ 1,077 and $ 53.85. Respondent also determined an addition to tax under section 6653(a)(2) *702 in the amount of 50 percent of the interest due on the entire deficiency. The issues are whether petitioner had unreported income from tips in the amount of $ 4,209.20 and whether she is liable for the additions to tax. The facts are as follows. Petitioner resided in Cape May, New Jersey, on the date that the petition was filed. During 1985, petitioner was employed as a service bartender at the Sands Hotel and Casino (Casino) in Atlantic City, New Jersey, and had been so employed since 1980. The Casino had three daily shifts. Petitioner worked 193.94 hours on the day shift, 1,017.62 hours on the swing shift and 454.95 on the graveyard shift for a total of 1,666.50 hours in 1985. During 1985, the Casino offered complimentary beverages (alcoholic and nonalcoholic) to its game-table and *703 slot machine patrons. Waitresses were assigned to particular stations. When they received drink requests, they would go to a service bar. Petitioner, as a service bartender, would prepare the drinks. A patron would tip the waitress who, in turn, would share tips received with the bartender. The bartender would share his or her tips with the other bar personnel. The bartenders also received an hourly wage. Petitioner maintained a booklet in which she alleges that she recorded all tip income. That record is not complete. During the first three months, petitioner made daily entries. For the second three months, petitioner rarely entered daily amounts but entered weekly amounts. Petitioner has pay slips for this period with notations of amounts on the backs. For three of the weeks during this period, petitioner entered amounts totaling $ 80 and for five weeks she entered $ 100. Petitioner did not work from July 1 through August 16. When she returned to work, the booklet reflects daily entries until December 21. Except for December 26 and 27, petitioner worked from December 21 through 31. The entries in the booklet total $ 4,770; however, the annual summary indicated that she *704 received $ 5,886. There is no comprehendible explanation as to how the difference of $ 1,116 was computed. During 1984 and 1985, agents of the Internal Revenue Service conducted a surveillance of waitresses serving the gambling areas in the 10 casinos operating in Atlantic City. Under that program, there were 420 half-hour observations of the servers (140 for each of the three shifts). The agents observed the amount of tips received. In cases where their vision was obstructed, they did not record any tip. If they were unsure of the denomination of a bill, they assumed the bill was $ 1. If the denomination of a coin could not be determined, they assumed it was a quarter. The agents then determined from interviews with waitresses, bartenders, and beverage managers that the waitresses generally paid the bartenders 15 percent of their gross tips. In determining the hourly rate of income, however, they reduced this figure to 13 percent. As a result of this program, the agents determined that service bartenders received $ 4.89 per hour for the day shift, $ 5.85 for the swing shift, and $ 7.02 for the graveyard shifts. Upon audit of petitioner's return, respondent determined that *705 her records did not adequately reflect her tip income and recomputed her income using the hourly rates set forth above multiplied by the number of hours that she worked on each shift. Respondent then determined that petitioner had not reported $ 4,209.20 in income and that her failure to report that income was due to negligence. The trial in this case was concluded on January 31, 1990. On May 31, 1990, petitioner filed a Motion for New Trial and Motion to Reopen the Record. The gravamens of these motions are that 1) petitioner was denied information necessary for the preparation of her case, 2) respondent failed to serve petitioner's subpoenas, and 3) respondent illegally obtained information from her bank. Petitioner contends that her records do reflect her tip income. While she presented a booklet and income statements purporting to reflect her tip income, there are several troubling aspects of these documents. First, the notations on the statements are all in pencil, whereas other notations on some of the same statements are in ink, *2062 as were virtually all her other entries of amounts received from tips. Second, petitioner testified that she carried these statements in her *706 wallet during the week that she worked, and yet none of the pay slips show any deterioration from such use and all appear to be in the same condition as the pay slips that were not carried in a wallet for a period of time. Third, in a sampling of other weeks recorded in the booklet, we did not find one week that totaled a round figure such as $ 80 or $ 100, and yet, during April and May, when petitioner allegedly kept her daily records on her pay slips, there were seven occurrences of these round numbers. While perhaps no one of these phenomena would be sufficient to disregard petitioner's testimony, their cumulative effect substantially discredits her testimony. Fourth, we are completely unconvinced by petitioner's explanation of the $ 1,116 figure that was used in her records to arrive at the $ 5,886 of tip income that she reported. Petitioner's testimony on this point was at best vague, and we have tried to reconcile the figures to no avail. Finally, we fail to understand the reason that petitioner reported no tips during the last part of December. Her explanation that she used some form of an accrual method of accounting is without any foundation. Even if she used the *707 accrual method, the tip income for that period had accrued and was received in 1985. In short, we do not find that petitioner's tip records clearly reflected her income. Petitioner also attacks respondent's reconstruction of her income. If a taxpayer's records do not clearly reflect income, under section 446(b), respondent may reconstruct a taxpayer's income by a method that in his opinion clearly reflects income. See, e.g., Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965). While the method of reconstruction does not have to be exact, the methodology must be reasonable. Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). Respondent's determination based on such a reconstruction is presumed to be correct, and a taxpayer has the burden of proving that the methodology used is unreasonable. Rule 142(a). See Welch v. Helvering, 290 U.S. 111 (1933). Respondent introduced the report and testimony of a person recognized by the Court to be an expert witness on statistical sampling techniques. The report and testimony concluded that the *708 methodology applied to reconstruct petitioner's income was based on sound statistical assumptions. Petitioner, with the exception of her statement that the surveillance did not appear to be random to her, produced no evidence that would indicate that the methodology was unreasonable. With regard to her statement, she offered no explanation as to the reason that the surveillance appeared to her not to be a valid random sampling for statistical purposes. She, therefore, has not met her burden of establishing that the methodology was unreasonable, and, indeed, after an examination of the report and the expert's testimony, we find no reason to doubt the statistical validity of the methodology. See Ross v. Commissioner, T.C. Memo. 1989-682 and cases cited therein, where similar methodologies have been adopted to reconstruct tip income. Turning next to respondent's determination of additions to tax under section 6653(a), under section 6001, petitioner is required to maintain sufficient records in order to determine her correct income. In petitioner's situation, this requires *709 the maintenance of an accurate and contemporaneous diary or record of tips. Sec. 1.6001-1, Income Tax Regs. We have found that she did not maintain adequate records and failed to report income. There is nothing difficult in maintaining an accurate and contemporaneous record of tip income, and we can only conclude that her failure to do so was due to negligence and an intentional disregard of rules and regulations. Accordingly, the additions to tax under section 6653(a)(1) and (2) are sustained. Finally, we turn to petitioner's motions for a new trial and to reopen the record. With respect to respondent's alleged failure to comply with Freedom of Information Act requests and her inability to obtain evidence, even if this were true, petitioner was well aware of this at the time of the trial and made no motions to compel discovery or for a continuance. Moreover, she makes no proffer as to how this information would have affected the outcome of this case. With respect to the allegation concerning the subpoenas, again even if it were true, petitioner was aware of this prior to the trial and failed to bring the matter to the Court's attention. Furthermore, *710 there is no requirement that one party serve subpoenas of another party. See Rule 147(c). Finally, with regard to the allegation that respondent illegally obtained financial information, the documents to which petitioner objects, while introduced into evidence, have not been a factor in the Court's determination because, even though the documents were executed by petitioner, the Court is convinced that figures on those documents were inaccurate. Thus, even if the evidence should have been excluded, any error was harmless. The Motion *2063 for a New Trial and Motion to Reopen the Record are denied. An appropriate order will be issued. Decision will be entered for the respondent. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect for the year in question. Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided.↩