NORMAN W. SAUKERSON AND GLADYS M. SAUKERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Saukerson v. Commissioner
Docket No. 652-73.
United States Tax Court
T.C. Memo 1975-188; 1975 Tax Ct. Memo LEXIS 186; 34 T.C.M. (CCH) 814; T.C.M. (RIA) 750188; June 16, 1975, Filed *186 Petitioner, a waitress, failed to keep records of her cash tips during 1969. Held, respondent's determination of additional income is sustained. Gladys M. Saukerson, pro se. Gerald W. Leland, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency in petitioners' income tax for the taxable year 1969 in the amount of $228.39. The sole issue presented for our determination is whether respondent erred in determining *187 that petitioners had additional tip income for the year in issue. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Norman W. Saukerson and Gladys M. Saukerson, are husband and wife and resided in Minneapolis, Minn., at the time of the filing of their petition with this Court. For the taxable year 1969 petitioners timely filed a joint Federal income tax return with the Internal Revenue Service. During 1969 Gladys M. Saukerson (hereinafter petitioner) was employed as a waitress in the Norse Room of the Leamington Hotel, Minneapolis, Minn. The Leamington Hotel was considered one of the better hotels in Minneapolis and handled many of that city's hotel conventions. The Norse Room was a quality dinner room and bar, serving lunch and dinner. The only other restaurant in the hotel during 1969 was the Koffee Klatch, a coffee shop serving only breakfast and lunch. Petitioner did not work in the Koffee Klatch. During 1969 petitioner worked as a waitress in the Norse Room approximately 250 days for a total of 1,802 hours. Her work shift was usually 5:00 p.m. to 1:00 a.m. After 10:30 p.m. food orders were no longer taken and waitresses would *188 no longer be assigned to specific stations, but would rotate, serving customers as they came in. During 1969 petitioner had the lowest seniority and, as a result, would usually be the first waitress asked to leave when there were few customers. Petitioner ceased working in the Norse Room in June 1970. During 1969 guests of the Leamington Hotel could pay for food and beverages served in the Norse Room by charging the bill to their room. Gratuities could also be charged to the room bill. Whenever a hotel guest charged to his or her room bill a gratuity for service in the Norse Room, the cashier would immediately thereafter pay the waiter or waitress the amount of the gratuity. During 1969 the waiters and waitresses in the Norse Room and Koffee Klatch worked a total of 45,656 hours. [1] The total food and beverage sales for the Norse Room and Koffee Klatch for 1969 were $647,211.40. [2]
*189 The Leamington Hotel would furnish its waiters and waitresses with printed forms to maintain tip records. Monthly reports would then be given to the hotel by the seventh of each month reflecting the tips received during the preceding month. At the end of the year the hotel would report these tips on the employees' W-2 forms. Pursuant to section 451(c), [3] tips received in December of each year and reported to the hotel in January were reflected in the W-2 forms for the following year. Petitioner, in her monthly tip records for 1969, recorded only tips on credit cards and other charge accounts. She did not maintain a record of cash tips. During 1969 petitioner reported receiving no tips on credit charges on 44 days of the approximately 250 days she worked. She reported tip income of less than $1.50 on 30 days and tip income between $1.51 and $5.01 on 73 days. Petitioner's monthly record of tips from December 1968 through December 1969, and the amounts furnished to her employer, were as follows: Petitioner's
Reported Month
Records
to Hotel
December 1968
$ 47.41
$ 60.00
January 1969
127.24
130.00
February
111.00
111.00
March
80.68
90.00
April
135.34
136.00
May
135.02
135.25
June
75.07
80.00
July
61.18
Not reported
August
63.17
85.00
September
141.45
145.00
October
89.51
95.00
November
86.55
90.00
December
54.20
60.00
*190 For the taxable year 1969 petitioner received wages of $2,565.75 and reported to her employer tips totaling $1,157.25. Petitioner's W-2 form reflected a gross income of $3,723. On their 1969 return petitioners reported, in addition to the $3,723, the $61 in tip income not reported to the hotel for July. On audit respondent determined that petitioner should have reported tip income in the amount of $2,270, thereby increasing petitioners' gross income by $1,052. Respondent reconstructed petitioner's tip income as follows: First the total sales of food and beverages for the Norse Room and Koffee Klatch were obtained. This amount was divided by the total number of hours worked by all the waiters and waitresses, resulting in a sales per hour average. Respondent then determined that a reasonable tip factor would be 10 percent. In reaching this percentage respondent took random samplings of all room billings for food and beverages sold in the Norse Room which also had gratuities included. Of 1,843 billings examined, 848 had gratuities for food and beverages. A five-day random sampling reflected an average gratuity of 16.03 percent. [4] The highest, lowest, and average month for food *191 and beverage sales for the Norse Room were August, December and January, respectively. [5] A random sampling of 15 days in December 1969, 12 days in January 1969, and 12 days in August 1969 reflected average gratuities of 16.25 percent, 16.57 percent and 15.35 percent, respectively. [6]
The ten percent tip factor was applied to the average sales per hour producing an average hourly tip. The resultant figure was then multiplied by the number of hours petitioner worked to determine her gross tip income. This amount was reduced by 10 percent to cover any payments *192 petitioner may have made to busboys. The actual computation was as follows: Average sales per hour = $647,211.20 (total sales) / 45,656 (total hours) = $14.17/hr. Average tip per hour = 10% (respondent's tip factor) X $14.17/hr. = $1.41/hr. (rounded to $1.40/hr.) [7]
Petitioner's gross tips = $1.40/hr. X 1,802 hrs. (hours petitioner worked) = $2,522 10 percent reduction for any payments to busboys = 10% X $2,522 = ( $252) Petitioner's tip income as determined by respondent = $2,270
OPINION The sole issue concerns the amount of tips petitioner received during 1969. Respondent's determination of petitioner's tip income is presumptively correct and petitioner bears the burden of proving it erroneous. Welch v. Helvering,290 U.S. 111 (1933); Anson v. Commissioner,328 F. 2d 703, 706 (10th Cir. 1964), affg. a Memorandum Opinion of this Court; Barry Meneguzzo,43 T.C. 824, 834 (1965); Rule 142, Tax Court Rules of Practice and Procedure.
As petitioner has failed to keep any record of her cash tips respondent was clearly justified in reconstructing *193 her tip income. Section 446(b) [8]; Barry Meneguzzo,supra at 831-833; Dorothy L. Sutherland,32 T.C. 862, 866-867 (1959). See also Anson v. Commissioner,supra.We believe respondent's formula to be a fair and reasonable method of determining petitioner's tip income, given the information available. Cf. Barry Meneguzzo,supra;Carroll F. Schroeder,40 T.C. 30, 33 (1963). [9]
The ten percent tip factor was certainly reasonable in this instance. Compare Mendelson v. Commissioner,305 F. 2d 519 (7th Cir. 1962), affg. a Memorandum Opinion of this Court, certiorari denied 371 U.S. 877 (1962). In our opinion it took into account any *194 of the various factors which would tend to reduce the average tip received by any particular waiter or waitress. Petitioner argues that respondent's formula is unfair; however, she has presented no credible evidence to suggest that the formula, as applied to her, was arbitrary, erroneous or unreasonable. Reconstructions are seldom, if ever, exact; nor are they required to be. All that is required is that the reconstruction be reasonable in light of all the surrounding facts and circumstances. Carroll F. Schroeder,supra.Consequently, respondent's determination is sustained. Decision will be entered for the respondent.
Footnotes
1. Although petitioner worked only in the Norse Room, respondent was unable to break down the hours between the two restaurants. Generally, larger gratuities were left at the Norse Room, it being the more formal of the two restaurants. ↩
2. ↩
Norse Room - food
$357,359.51 - beverages
207,501.39
Koffee Klatch - food
82,350.50
$647,211.40
3. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
4. ↩
Total Tips Tips/
Charged
Sales Sales
5-day random sampling
$157.44
$982.03
.1603
(2-15-69; 3-19-69; 5-16-69;
6-13-69; 6-14-69)
5. ↩ Norse Room: Sales Month
Food
Beverage
August (highest)
$39,305.09
$16,577.65
December (lowest)
21,610.70
14,656.83
January (average)
28,409.45
18,780.95
6. ↩
Total Tips
Tips/ Date
Charges
Sales
Sales
August (12-day random sampling)
$418.52
$2,727.18
.15346
December (15-day random sampling)
178.73
1,099.93
.16249
January (12-day random sampling)
300.78
1,815.39
.16568
7. The tip income reported by petitioner averaged 67 cents per hour.↩
8. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. * * * * *
(b) Exceptions.--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.↩
9. See also Arthur J. McQuatters,T.C. Memo. 1973-240↩.