WILLIAM E. MORRILL AND CLEO P. MORRILL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morrill v. Commissioner
Docket No. 4563-81.
United States Tax Court
T.C. Memo 1982-596; 1982 Tax Ct. Memo LEXIS 154; 44 T.C.M. (CCH) 1381; T.C.M. (RIA) 82596; October 7, 1982. William E. Morrill, pro se. Joel A. Lopata, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined a deficiency in petitioners' 1977 Federal income tax in the amount of $393.00, together with an addition to tax under section 6653(a) [1] in the amount of $19.65. All such amounts are in controversy. Two issues are presented for our determination: (a) whether petitioner Cleo P. Morrill (hereinafter referred to as "petitioner") [2] had unreported tip income from her employment as a waitress during the year 1977 in the amount of $1,825; *155 and (b) whether an addition to tax should be imposed for negligence with respect to the required reporting and record keeping in connection with such tip income, under the provisions of section 6653(a). The evidence consists of a stipulation of facts with certain joint exhibits, which are incorporated herein by this reference, together with other testimony and exhibits received at trial. At the time of filing their petition herein, petitioners resided in North Salt Lake City, Utah. Petitioners timely filed a joint Federal income tax return for the year 1977 on the calendar year and cash basis. Respondent's statutory notice was issued on January 22, 1981. During the year 1977, and for about eight years prior thereto, petitioner was employed as a waitress at the Coffee Mill, a restaurant located on the premises of *156 the Hilton Inn in Salt Lake City, Utah. The Coffee Mill was owned and operated by Pearson Enterprises. Petitioner's Form W-2 for the year 1977, filed by Pearson Enterprises and included with her 1977 return, included pay for her services at the rate of $1.75 per hour, plus a so-called credit for tips calculated at the rate of $ .45 per hour, or a total of $2.20 per hour, and Federal income tax as well as petitioner's social security tax was withheld on this basis. The total amount of compensation reported on petitioner's said W-2 form for the year 1977 was $2,763.00. Said amount included $155.71 of vacation pay, for a net amount of $2,607.29 combined wages and reported tips for the amount of hours petitioner actually worked during the year 1977. When divided by the rate of $2.20 for hourly wage and reported tips (as above), petitioner's reported compensation indicated that she worked 1,185 hours during 1977. Removing from the reported compensation the amount attributable to tips, at the rate of $ .45 an hour, it appears that petitioner's W-2 form included total tips in the amount of $533. In addition, petitioner reported $415 of additional tips on her 1977 return. As reported, *157 petitioner's income reflected an average tip rate of $ .81 per hour. Respondent's determination of additional income in his statutory notice of deficiency was based upon an analysis of the records of the Coffee Mill for 1977. In making this study, respondent surveyed seven restaurants or coffee shops owned or operated by Pearson Enterprises, one of which was the Coffee Mill. The average tip income for each eating establishment was determined or computed separately because of the different nature and prices of the restaurants, and the possibility of different tipping rates and average tip income. In conducting this study, respondent examined all available records of charge and credit sales of the Coffee Mill for 28 randomly selected days during the year 1977. There were eliminated from these charge or credit sales all tickets where no tip was shown, as well as all tickets where a tip in excess of 50 percent of the face amount of the check was shown, on the basis that such tickets were unrepresentative and would distort the sample. As adjusted, the charge sales analyzed showed an average tip being paid to the server of 15 percent of the amount of the check. Respondent then reduced *158 this percentage from 15 percent to 13 percent, to give effect to the observed fact that customers paying cash tended to tip at a lower rate than charge customers. Respondent then took the Coffee Mill sales for the entire year 1977 (including local sales tax) and discounted this figure by 10 percent to take account of those customers who tipped nothing or who walked out without paying their checks. Applying the discounted rate of 13 percent to this reduced figure, respondent arrived at a total tip figure for the restaurant for the year of $84,501. Respondent then reduced this figure by a further 10 percent, to give effect to the custom of paying 10 percent of the tips to the bus boys at the restaurant, with a resulting figure of $76,051 as constituting the net tips received by the services at the Coffee Mill. Using the total number of hours worked by servers in the restaurant, shown by the records of the Coffee Mill to be 32,463, respondent arrived at an average of $2.34 per hour as constituting the tips received by servers at the Coffee Mill in 1977. This average figure, when applied to the 1,185 hours worked by petitioner during the year, produced a total tip income for her *159 of $2,773. Subtracting the tip income included in petitioner's W-2 form, in the amount of $533, together with the additional $415 of tip income reported by petitioner, respondent arrived at a figure of $1,825 as constituting unreported tip income, and the instant proposed deficiency was accordingly computed. At trial, there was introduced as an exhibit a copy of a calendar for the year 1977, consisting of one page for each month of the year, subdivided into squares representing each day of the month. On this calendar, there were entered various odd dollar amounts, generally with respect to Sundays, Wednesdays, Thursdays, and Saturdays, purporting to represent the amount of tips received by petitioner on each of said days. However, petitioner failed to appear or testify at trial with respect to this calendar or how the amounts entered thereon were arrived at, and no other evidence was offered by petitioners with respect to the days or hours when petitioner worked, nor as to any other method by which petitioner kept track of her tip income. In general, it cannot be questioned that tips are properly considered as part of an individual's taxable income under section 61. Cracchiola v. Commissioner,643 F.2d 1383 (9th Cir. 1981), *160 affg. a Memorandum Opinion of this Court; Schroeder v. Commissioner,40 T.C. 30 (1963); section 1.61-2(a)(1), Income Tax Regs. Where a taxpayer fails to keep records or the records kept are inadequate, respondent may reconstruct the taxpayer's income by use of a formula; section 446(b); Cracchiola v. Commissioner,supra; and such reconstruction will be sustained if it is not shown to be arbitrary and is based upon a reasonable methodology. Meneguzzo v. Commissioner,43 T.C. 824 (1965); Thor Power Tool Co. v. Commissioner,439 U.S. 522 (1979). Where respondent has made such a determination, as here, the burden of proof in this Court is upon petitioner to show that respondent committed error in his determinations. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). In the instant case, we must hold that petitioner has failed to carry her necessary burden of proof to show that respondent's determination was in error. On this record, at least, it is clear that petitioner failed to show that her records were adequate and accurate. Based upon the gross business done by the Coffee Mill in 1977 *161 ($722,235.00) and the total number of hours worked by all waitresses that year at the Coffee Mill (32,464 hours), which figures are not disputed by petitioners herein, it would appear that the servers at the Coffee Mill in 1977 served an average of approximately $22 worth of food each hour they worked. Based upon the tip income as reported by petitioner, this would indicate that she was only receiving tips at a net rate of about 3.7 percent, an amount which is so low that it borders on the incredible. Cf. Schroeder v. Commissioner,supra, at page 33. The method used by respondent in this case in recomputing petitioner's tip income is practically identical to the methodology employed by respondent which has been approved by this Couirt in other cases. See McQuatters v. Commissioner,T.C. Memo. 1973-240; Saukerson v. Commissioner,T.C. Memo. 1975-188. Petitioner in this case has failed to present any evidence which would indicate that any special circumstances were present which would justify a departure from the averaging results which respondent's reconstruction method has produced. [3] We accordingly sustain respondent's determination *162 with regard to the deficiency herein. With respect to the proposed imposition of the addition to tax under section 6653(a), petitioner has the burden of proving that this addition is in error. Bixby v. Commissioner,58 T.C. 757 (1972). Here again, the burden of proof is on petitioner, and since she failed to show that her failure to keep adequate records of tip income was not due to negligence, we conclude that respondent must be sustained on this issue also. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioner William E. Morrill is involved herein only by reason of having filed a joint return for the year 1977 with petitioner Cleo P. Morrill.↩
3. At trial, and on brief, petitioner argued that there was testimony to the effect that servers on the early morning shift (i.e., at breakfast time) would receive smaller tips than those working later shifts, because the size of the average check would be smaller. The point might have some validity, but there is nothing in this record to show (a) that the Coffee Mill servers were not rotated among the various shifts, and (b) that petitioner worked only on the early morning shift - thereby casting doubt on respondent's averaging technique.↩