BRANKO Z. RADD AND MARIA O. RADD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Radd v. Commissioner
Docket No. 1664-81.
United States Tax Court
T.C. Memo 1982-604; 1982 Tax Ct. Memo LEXIS 142; 44 T.C.M. (CCH) 1415; T.C.M. (RIA) 82604; October 18, 1982. Branko Z. Radd, pro se. Anne Hintermeister, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined a deficiency in petitioners' 1973 Federal income tax in the amount of $406.59, together with an addition to tax under section 6653(a) [1] in the amount of $20.33. These are the amounts in dispute. We must determine: (a) whether petitioner *143 Branko Z. Radd (hereinafter referred to as "petitioner") [2] had unreported tip income from his employment as a waiter during the year 1973 in the amount of $2,358.38, and (b) whether an addition to tax under section 6653(a) should be imposed because of petitioner's negligence in connection with his required reporting and record keeping in connection with such tip income. The evidence consists of a stipulation of facts with certain joint exhibits, which are incorporated herein by this reference, together with testimony and exhibits received at trial. At the time of filing their petition herein, petitioners resided in Douglaston, New York. Petitioners timely filed a joint Federal income tax return for the year 1973 on the calendar year and cash basis. Respondent's statutory notice was issued on November 7, 1980. During the *144 year 1973, and apparently for some years prior thereto, petitioner was employed as a waiter at the 21 Club, Inc., a well-known restaurant patronized by many celebrities and prominent people in politics, business and the arts, located in the mid-town section of New York City. The 21 Club was open from room until 12:30 a.m., serving beverages and three meals: lunch, dinner and a late supper. The premises consisted of four floors, two of which were used for banquets and private parties and two of which were open to the public. Petitioner's regular post of duty, which he served throughout 1973, was in the "21" or center section of the bar area located on the first floor of the 21 Club building. The tables in the bar area were used for serving meals as well as drinks. At that post of duty, petitioner worked as a member of a team of three waiters, and this team was responsible for seven tables: four tables for two, two tables for four and one table for six. Each waiter on the team worked at two meals per day, and petitioner and the other two waiters on the team shared equally the tips which were derived from customers at their tables. In 1973, petitioner worked at 21 Club five days *145 a week for 50 weeks. The system for handling tips of waiters and captains at 21 Club was as follows: ten percent of the tips received by waiters and captains were paid to the bus boys serving the respective stations; the captains and waiters handled the cash tips received themselves; and, with respect to tips authorized by charge and credit card customers, the 21 Club maintained a petty cash fund into which all such tips authorized on charge accounts or credit card slips were collected. Pursuant to the employees' union agreement with 21 Club in effect during 1973, the charge and credit card tips were distributed to the employees by 12 noon of the day following the date of the charge sale transaction, with the waiters' tips for petitioner's station being shared equally between him and his two team members, and any designated tip for the captain for that station going to the captain involved. Where the charge or credit card slip included a tip for the captain only, or where it was not clear whether the tip was intended for the captain or the waiter, the entire tip would go to the waiters if the tip was 15 percent or less of the check; if such tip was more than 15 percent of the *146 check, 10 percent would go to the bus boy and the remainder would be divided one-third to the captain and two-thirds to the waiter team. Petitioner did not share his tips with any 21 Club employees other than his two waiter teammates and his bus boys. The 21 Club petty cash fund or "exchange account" was maintained for charge account tips to captains and waiters only. For the year 1973, petitioner reported income from his employment at 21 Club in the total amount of $9,003.50, of which $4,637.50 constituted wages, and $4,366.00 was tip income. Such books and records which petitioner maintained with respect to his 1973 income from tips were destroyed after the end of the year. In addition to providing food and drink with table service, 21 Club also prepared and sold food which was to be picked up by the customer and served elsewhere, and also provided telephone service, theatre tickets and limousine service to its customers as well as selling a line of gifts and souvenir items to "21" patrons. All such items were included on a single check which was presented to the customer, whether paid for by cash, charge or credit card. Waiters and captains, however, were only tipped for *147 the portion of the check which involved table service. Respondent's determination of additional income in his statutory notice of deficiency herein was based upon an analysis of the records of 21 Club, Inc., and using the figures disclosed therein with respect to its sales and the wages and tips received by waiters and captains for the year 1973. Respondent first took the total charge tips of $645,353.46 and divided it by total charge sales of $4,223,201.39, producing an average tip on charge sales of 15.281 percent. Respondent then reduced this percentage figure by 10 percent to allow for the sharing of tips with bus boys, for a net average tip on charge sales paid to waiters and captains of 13.753 percent. Applying this reduced percentage to total sales of 21 Club in 1973 of $4,997.621.85, respondent derived a figure of $687,324.43 as constituting the average tips received by waiters and captains for the year on cash and credit sales. This latter figure, when divided by the actual wages paid by 21 Club to its captains and waiters, of $427,183.83, produced a tips-to-wages ratio of 160.9 percent. Respondent then reduced this ratio to 145 percent, to account for any possible *148 variations from the norm that might have occurred in petitioner's case. Applying such reduced ration to petitioner's actual reported wages of $4,637.50 for 1973, respondent produced tip income for petitioner in that year of $6,724.38. Crediting petitioner with the reported tip income of $4,366.00, respondent thereupon produced a figure of $2,358.38 as representing petitioner's unreported tip income for that year. It can no longer be questioned that tips are properly considered as part of an individual's taxable income under section 61. Cracchiola v. Commissioner,643 F.2d 1383 (9th Cir. 1981), affg. a Memorandum Opinion of this Court; Schroeder v. Commissioner,40 T.C. 30 (1963); section 1.61-2(a)(1), Income Tax Regs. Where a taxpayer fails to keep records or the records kept are inadequate, respondent may reconstruct the taxpayer's income by use of a formula, section 446(b); Crachiola v. Commissioner,supra; and such reconstruction will be sustained if it is not shown to be arbitrary and is based upon a reasonable methodology. Meneguzzo v. Commissioner,43 T.C. 824 (1965); Thor Power Tool Co. v. Commissioner,439 U.S. 522 (1979). *149 Where respondent has made such a determination, as here, the burden of proof in this Court is upon petitioner to show that respondent committed error in his determinations. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). On this record, we must hold that petitioner has failed to carry his necessary burden of proof to show that respondent's determination was in error. The method used by respondent in this case in recomputing petitioner's tip income is fairly comparable to the methodology employed by respondent which has been approved by this Court in other cases. See Meneguzzo v. Commissioner,supra;McQuatters v. Commissioner,T.C. Memo. 1973-240; Saukerson v. Commissioner,T.C. Memo. 1975-188. Although petitioner testified in his own behalf at the trial herein, his testimony was general and indefinite and he failed to show any special circumstances applicable to him which would justify departure from the averaging results which respondent's reconstruction method has produced. Thus, for example, petitioner complains that his station included the "preferred" area of the "21 Bar" portion of the restaurant, *150 which he says was patronized by a large number of political, business and theatrical celebrities who were "guests of the house" and left no tips at all; and petitioner complains that the 21 Club management, in compensating petitioner and his teammates for this, was less generous than the customers would have been; but petitioner offered no concrete evidence from which we could make a finding in this respect. Petitioner likewise complains that respondent's computation, discussed above, lumped into the total sales of 21 Club items such as food for off-premises consumption, gifts, tickets, limousines, etc, on which no tips to waiters and captains were paid, but to which respondent applied his computed average net tip of 13.753 percent. Respondent's agent who conducted the examination conceded that this was so, but testified that such sideline sales were considered to be inconsequential in amount, and petitioner offered no evidence which would quantify such nontip sales. In any case, however, it is clear that respondent's error in this respect, if any, was an error in petitioner's favor. Since respondent's computation of the average tips (before discounts) was made by dividing the *151 actual charge tips by the the actual charge sales, any increase of the sales figure by including a nontip item would only increase the denominator of the fraction, thus decreasing the average percentage of tips which respondent used in recomputing petitioner's tip income. We hold that respondent's determination was made on a rational basis, and that petitioner has failed to demonstrate any error therein. Where, as here, petitioner has failed to keep any adequate books and records by which his income can be substantiated, absolute accuracy in respondent's redetermination is not required. As the Court of Appeals for the 7th Circuit said in a comparable situation: Obviously, where a taxpayer keeps no records disclosing his income, no method can be devised which will produce an exact result. The law does not require that much. It is sufficient if the method employed produces a result which is substantially correct. All taxpayers, including the ones here involved, by failure to keep records of their income assume the hazard that they may be called upon to pay a tax based on an income which cannot be determined to a certainty. Such a situation, however, arises from *152 the fault of the taxpayer and not that of the Commissioner. [Mendelson v. Commissioner,305 F.2d 519, 523 (7th Cir. 1962)]
We accordingly sustain respondent's determination with regard to the unreported tip income herein. With respect to the proposed imposition of the addition to tax under section 6653(a), petitioner has the burden of proving that this addition is in error. Bixby v. Commissioner,58 T.C. 757 (1972). Although petitioner testified that he kept records during 1973 with respect to his income, he also testified that he destroyed them after the end of the year. Although he claimed that he filed monthly reports with 21 Club, Inc. with respect to his tip income, he failed to subpoena such records or produce them at trial. Since it is plain that petitioner has failed to keep adequate books and records as required by section 6001 and section 1.6001-1(e), Income Tax Regs., and since petitioner has failed to demonstrate that such failure to keep books and records was not negligent, we conclude that respondent must be sustained on this issue also. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioner Maria O. Radd is involved herein only by reason of having filed a joint return for the year 1973 with petitioner Branko Z. Radd.↩