GEORGE L. NIKA AND VASILIKE D. NIKA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nika v. Commissioner
Docket No. 34084-87
United States Tax Court
T.C. Memo 1991-335; 1991 Tax Ct. Memo LEXIS 386; 62 T.C.M. (CCH) 203; T.C.M. (RIA) 91335; July 22, 1991, Filed *386 Decision will be entered under Rule 155. George L. Nika, pro se. Carroll D. Lansdell, for respondent. WHALEN, Judge. WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 2,247.00 in petitioners' Federal income tax for calendar year 1985 and an addition to tax of $ 112.35, pursuant to section 6653(a)(1), and an additional amount equal to 50 percent of the interest payable on the amount of the underpayment, pursuant to section 6653(a)(2). All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, unless otherwise indicated. The issues for decision are: (1) Whether petitioners understated the tip income which they received during 1985; and (2) whether petitioners are liable for the additions to tax under section 6653(a)(1) and (2). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by reference. Petitioners resided at Northfield, New Jersey, at the time they filed the subject petition. In this opinion, we sometimes refer to Mr. Nika as petitioner. During 1985, *387 Mr. Nika was employed as a "food captain" by Victoria's Restaurant (Victoria's) located in The Golden Nugget Hotel in Atlantic City, New Jersey. Victoria's was owned by GNOC Corp. (GNOC), a corporation engaged in the hotel, restaurant, and casino businesses. Petitioner's compensation for work at Victoria's consisted of salary paid by GNOC and tips paid by patrons of the restaurant. Generally, for purposes of serving customers, Victoria's staff organized itself into teams, each of which was composed of waiters, food servers and busboys. Each team functioned under the supervision of a food captain. Except for wine, customers usually ordered all food and beverages from, and were served by, members of the same team. Customers usually ordered wine from one of two wine stewards who were not members of a team. However, customers sometimes ordered wine directly from a team member. In those instances, team members and not a wine steward would serve the wine to the customer. Regardless of who took a customer's order, the customer would receive only one bill for all food and beverages consumed. Patrons customarily left a percentage of the total cost of the food and beverages consumed *388 as a "tip" for the services of waiters and other members of the restaurant staff. All tips received by team members were pooled and divided by the food captain at the end of the shift. They were divided not only among the members of the team, but also among several other restaurant employees, including bartenders, wine stewards, and wine pourers. According to the company's general ledger, during 1985, GNOC realized gross income from food sales at Victoria's of $ 1,262,874 and gross income from beverage sales, including wines, of $ 493,038. Therefore, the company realized aggregate gross sales at Victoria's of $ 1,755,912. The company's payroll records reflect the fact that all food servers and food captains employed by Victoria's during 1985 worked a total of 18,160.50 hours. According to the company's payroll records, Mr. Nika worked 1,762.50 hours during 1985. GNOC's accounting staff prepared daily reports which presented the daily food and beverage sales at each of the restaurants operated by the company, including Victoria's. These reports were called daily operation reports (DORs) by company employees and were used solely as a management tool. They were not audited or *389 verified for accuracy. The company also prepared monthly summaries of the DORs. On their joint Federal income tax return for 1985, petitioners reported tip income of $ 15,000 from Victoria's. In October, 1986 they filed an amended return for 1985 on which they reported tip income of $ 10,000. Petitioners now concede that the tip income reported on the amended return is understated by $ 1,350. They knew the amended return understated Mr. Nika's tip income at the time it was filed. In his notice of deficiency, respondent determined that petitioner received tip income from Victoria's during 1985 in the amount of $ 18,196. Respondent computed that amount based upon information contained in accounting records supplied by GNOC and from other sources. His computation is as follows: a. Total outlet sales, net of taxes
$ 1,755,912.00 b. Total wine steward wine sales
(295,804.00)
c. Total outlet sales, less wine sales
1,460,108.00 d. Less: Non-tipped sales 9%
(131,409.72)
e. Equals: net food server sales
1,328,698.28 f. Less: Non-charge sales 68.81%
(914,277.29)
g. Equals: charge sales
414,420.99 h. Times charge sales tip percentage
19.98%
i. Equals: tips from charge sales
82,801.30 j. Non-charge sales (from line f)
914,277.29 k. Times non-charge tip percentage
17.98%
l. Equals: tips from non-charge sales
164,387.06 m. Total gross tips (Add lines 9 & 12)
247,188.36 n. Less: Busboy payouts 17%
(42,022.02)
o. Less: Service bartender payouts
(9,080.24)
p. Equals: adjusted tips
196,086.10 q. Divided by total food server and
food captain hours
18,160.50 r. Equals tip rate per hour
10.80 s. Less: Rate reduction factor 5%
(.54)
t. Equals: net tip rate per hour
10.26 u. Times: petitioners' hours worked
1,773.50 v. Equals: tip income
$ 18,196.11 *390 Respondent concedes that Mr. Nika worked a total of 1,762.50 hours during 1985, 11 hours less than 1,773.50, the number used in the above computation. On brief, respondent renews an objection on the ground of lack of authenticity to the introduction into evidence of petitioners' Exhibit 22. The exhibit presents certain figures for credit card charges, credit card sales, and total tips. Respondent's objection is hereby overruled. OPINION The principal issue in this case is whether respondent correctly determined that petitioners understated the tip income received by Mr. Nika during 1985. Tip income is, of course, includable in gross income as compensation for services rendered. Sec. 61(a); sec. 1.61-2(a)(1), Income Tax Regs.; Killoran v. Commissioner, 709 F.2d 31 (9th Cir. 1983), affg. a Memorandum Opinion of this Court; Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). Respondent determined that during 1985 Mr. Nika received tip income from Victoria's of $ 18,196.11. He concedes that this determination is overstated to the extent that it uses 1,773.50, rather *391 than 1,762.50, as the number of hours which Mr. Nika worked during 1985. Petitioners bear the burden of proving that respondent's determination is erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure.
In passing, we note that section 6053(a) requires employees to report tip income to their employer on a monthly basis. In addition, section 6053(c) requires a "large food or beverage establishment," as defined in section 6053(c)(4), to make reports to the Secretary and to employees of the establishment about its receipts and the amount of tips allocated to employees for purposes of that subsection. At trial, neither party raised an issue concerning these reporting requirements or any reports which may or may not have been filed thereunder. Petitioners attempt to meet their burden of proof first by arguing that Mr. Nika's tip income amounted to $ 11,350, rather than $ 18,196, as determined by respondent. In support of that argument, they introduced a document at trial which they claim to be "an adequate contemporaneous record" of Mr. Nika's tip income. Based on that record, they argue that section 446(b) "should not apply." Section 446(b) gives respondent authority *392 to compute a taxpayer's income under a method which, in his opinion, clearly reflects income, if no method of accounting has been regularly used by the taxpayer, or if the taxpayer's method of computing income does not clearly reflect income. Petitioners appear to argue that respondent is bound to accept the so-called log of Mr. Nika's tip income. We disagree. It is clear that petitioners themselves did not use the so-called log in computing taxable income in 1985. See sec. 446(a). They did not use the log when they filed their 1985 income tax return and reported $ 15,000 of tip income, $ 3,600 more than the amount shown on the log. Furthermore, they did not use it when they filed their amended return for 1985 and reported $ 10,000 of tip income for the year, $ 1,350 less than the amount shown on the log. Petitioners failed to offer a satisfactory explanation for disregarding the log. Mr. Nika testified as follows: THE WITNESS: He asked me the questions, Your Honor, concerning why I filed $ 10,000 -- sorry -- why I filed $ 15 and then why I filed $ 10, and I said I had a reason for this particular procedure. And the reason was, $ 15 was filed originally because in the *393 original -- the preliminary audit, that was figured to be safe ground to not worry about being audited. If you put the $ 15 in there, you're pretty much on safe grounds. Don't worry. Because this is what we figured out -- this is what they were looking for in those days, in '81, '82, and '83, '84. After my Court settlement, I put down the $ 10,000, as I said earlier, in haste, because it was just a boiling matter. It was not thoughtful consideration. And as I said, I accept the responsibility on that particular behalf. It was not perjury. I do not believe it was perjury. It was a mistake on my part. Again, I admitted to that mistake. I did not declare the $ 10,000 in the beginning because I felt that I was probably walking into unsecure hands. Then I said, "No, let me declare the $ 15." Then, after I realized what the Court settlements were in one particular year, then I said, "Fine. Now we've reached common, so-called, ground." And that was the reason why I declared the $ 10,000, which should have been $ 11,335. That's all.
We do not believe that respondent should be bound by the records of a taxpayer which the taxpayer himself disregarded in computing and reporting *394 taxable income. Under these circumstances, respondent was fully entitled to determine, pursuant to section 446(b), that petitioners did not regularly use a method of accounting to compute income or that petitioners' records were prepared using a method which did not clearly reflect income and he was justified in adopting a method which, in his opinion, did clearly reflect income. See sec. 446(b); Anson v. Commissioner, 328 F.2d 703 (10th Cir. 1964); Menequzzo v. Commissioner, supra at 831; Zibilich v. Commissioner, T.C. Memo 1972-92. Under section 446(b), respondent has great latitude in selecting a method of accounting to be used. E.g., Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). Respondent's reconstruction of a taxpayer's tip income must be reasonable in light of all of the surrounding facts and circumstances, but it is well settled that the reconstruction need not be exact. E.g., Schroeder v. Commissioner, 40 T.C. 30, 33 (1963); Kuras v. Commissioner, T.C. Memo 1980-32. In this case, respondent reconstructed petitioners' tip income based upon *395 a sales analysis and, for this purpose, he used audited sales figures taken from Victoria's general ledger. This and other courts have accepted similar methods of reconstructing tip income. Cracchiola v. Commissioner, 643 F.2d 1383 (9th Cir. 1981), affg. a Memorandum Opinion of this Court; Menequzzo v. Commissioner, supra.
Petitioners take issue with respondent's reconstruction of Mr. Nika's tip income, set out above. They argue that respondent's methodology and certain assumptions used in the computation are erroneous. They offer their own computation of Mr. Nika's tip income for 1985, purporting to show tip income in the amount of $ 11,420.61, which they ask the Court to accept, in lieu of respondent's. First, petitioners assert that respondent's computation is erroneous because it is based upon sales figures for the entire restaurant and arrives at an overall tip rate for waiters and food captains, regardless of individual team performance. By contrast, petitioners argue, their computation is based on the actual sales made by petitioners' team. We do not agree that petitioners' computation is more reliable than respondent's or *396 proves that respondent's computation is inaccurate. Indeed, the opposite appears to be the case. Petitioners' computation is not based upon sales records for the entire year but uses estimates of sales for two and one-half months. To obtain sales figures for Mr. Nika's team, petitioners used "chits" issued to the team by GNOC. These chits, however, only reflect sales made by petitioners' team for nine and one-half months of 1985. Petitioners estimated sales for the missing two and one-half months to arrive at a twelve month total. Moreover, the sales reflected on the chits were never audited or verified. Respondent's sales figures, on the other hand, were audited and are complete for the year. Therefore, we disagree with petitioners that their sales figures provide a better basis to determine the tip income received by petitioner. Second, petitioners contend that respondent's computation fails to fully account for sales of wine by wine stewards (line b of respondent's computation). Respondent eliminated these sales from his computation to account for the fact that a portion of a team's tips is paid to the wine stewards. Respondent computed wine stewards' sales of $ 295,804 *397 using weekly sales reports made by the wine stewards to Victoria's payroll department. Petitioner testified that these reports could be inaccurate, but his testimony fails to take into account the fact that waiters and other team members also sell wine. The wine sales figure used by petitioners in their computation is $ 93,632 higher than respondent's. It was derived from the DORs which apparently include wine sales for the restaurant as a whole, not just wine sales made by the wine stewards. Furthermore, it is unlikely that the weekly sales reports used by respondent are understated, as claimed by petitioners, because wine stewards are paid a commission on total wine sales, based upon those reports. Third, petitioners contend that respondent's computation understates the percentage of sales for which no tip was left (line d of respondent's computation). Respondent determined an approximate percentage of so-called nontipped sales, viz 9 percent, based upon interviews with food captains, food servers, managers, busboys and various other employees of Victoria's. Petitioners' computation uses a higher percentage, viz 16 percent, but petitioners presented no evidence, other than *398 Mr. Nika's testimony, to establish the validity of the higher percentage. We find petitioner's testimony on this point unconvincing. We are not required to accept the testimony of an interested party, and we do not do so here. Avery v. Commissioner, 574 F.2d 467 (9th Cir. 1978), affg. a Memorandum Opinion of this Court; Factor v. Commissioner, 281 F.2d 100, 111 (9th Cir. 1960), affg. a Memorandum Opinion of this Court. Fourth, petitioners question the allocation made by respondent between "charge sales" and "non-charge sales" (lines f and g of respondent's computation). Respondent's computation makes this allocation because patrons generally leave a smaller tip when they pay cash. In making this allocation, respondent used a 28-day sample of sales as reported on DORs. He computed the percentage of sales during the 28-day period which were charged and the percentage which were paid in cash. Respondent used these percentages to extrapolate the percentage of total sales during the year which were charged and the percentage which were paid in cash. We have specifically approved the use of a 28-day sample period in the reconstruction of *399 tip income in prior cases and believe that such a sample is appropriate here. See McLeod v. Commissioner, T.C. Memo 1984-658; Williams v. Commissioner, T.C. Memo 1984-640. Based upon his sample, respondent initially determined that charge sales accounted for approximately 59 percent of total sales. Upon further analysis, however, he found that approximately 85 percent of room charges, a component of charge sales, were complimentary and were likely to carry a lower tip than other charge sales. Therefore, in order to make his computation as conservative as possible, he reduced the percentage of charge sales to 31.19 percent and increased the percentage of "noncharge" sales to 68.81 percent. This adjustment had the effect of reducing the tip income computed by respondent because, as mentioned above, respondent applied a lower tip percentage to noncharge sales (compare line h with line k of respondent's computation). Fifth, petitioners contend that the tip percentage for charge sales used by respondent is too high (line h of respondent's computation). Respondent derived the subject percentage through an analysis of GNOC's Form 8027, Employer's *400 Annual Information Return of Tip Income and Allocated Tips, submitted for the year 1985. Respondent's analysis is as follows: a.
Charge sales (line 2, Form 8027)
$ 305,203.14 b.
Less: Charged tips (line 1, Form 8027)
(49,577.53)
subtotal
255,625.61 c.
Less: Sales Tax on net sales
(3% of line d)
(7,445.41)
d.
Net sales
$ 248,180.20 e.
Charged tips divided by net sales:
49,577.53/248,180.20 =
charged sale tip percentage
19.98 The above tip percentage for charge sales, 19.98 percent, is in accord with the percentage determined by respondent during prior audits of Victoria's. We note that in computing the above tip percentage, respondent reduced "charge" sales by sales tax, computed using a sales tax rate of 3% (see line c above). According to respondent, New Jersey levies a sales tax of 6 percent on food and a luxury tax of three percent on alcoholic beverages sold in Atlantic City. Respondent's analysis treats all sales as having been taxed at three percent because there was no accurate method to segregate charge sales of food from charge sales of alcoholic beverages. This has the effect of reducing the tip percentage computed by respondent. Petitioner *401 has not proven that respondent's tip percentage for charge sales is too high. Sixth, petitioners complain that the tip percentage for noncharge sales used in respondent's computation, 17.98 percent, is also too high (line k of respondent's computation). Respondent determined that percentage based on industry practice, interviews, the experience of his field agents, and court cases, all of which suggested that the tip percentage for noncharge sales is approximately 2 percent less than the tip percentage for charge sales. See Hascouet v. Commissioner, T.C. Memo 1982-261. Petitioners failed to introduce any evidence to show that a different rate should be used. Seventh, petitioners' computation uses a higher "payout" to busboys, maitre d's, bartenders, and wine pourers, than respondent's computation (lines n and o of respondent's computation). In addition, petitioners deduct a "1 percent cashier check error." Respondent determined the "payouts" through interviews with certain employees of Victoria's, including busboys, food captains, and food servers. Petitioners' challenge to respondent's computation on this point is based solely on Mr. Nika's testimony. *402 They offered no other evidence of the validity of their computation or of the invalidity of respondent's. Eighth, petitioners object to the number of hours used in respondent's computation as the time worked by Mr. Nika. Respondent used 1,773.50 as the total hours worked by Mr. Nika (line u of respondent's computation) but now concedes that the total should be 1,762.50. Petitioners agree that Mr. Nika was in the restaurant for a total of 1,762.50 hours in 1985. However, they assert that some hours were unproductive and that the actual time which Mr. Nika spent earning tips is only 1,724 hours. Even if Mr. Nika were correct that during 1985 he spent unproductive time at work, respondent's computation is not necessarily in error. Mr. Nika offered no evidence to prove that he was the only waiter or food captain to experience unproductive time and we have no reason to believe that all other waiters and food captains did not experience similar unproductive time. If respondent's computation were adjusted to remove the unproductive time of all waiters and food captains (line q of respondent's computation), a higher tip rate per hour would result. If the higher tip rate per hour, as *403 thus computed, were multiplied by the lower "productive" hours claimed by Mr. Nika (1,724 hours), the product would be similar to the amount computed by respondent. Respondent's determination of petitioner's tip income is presumptively correct. Anson v. Commissioner, 328 F.2d 703 (10th Cir. 1964), affg. a Memorandum Opinion of this Court; Menequzzo v. Commissioner, supra; Sutherland v. Commissioner, 32 T.C. 862 (1959). Based upon the above, we find that petitioners failed to present sufficient evidence to overcome that presumption and, accordingly, we hereby sustain respondent's determination. We must next decide whether petitioners are liable for additions to tax under section 6653(a)(1) and (2). Respondent determined that the underpayment, as defined by section 6653(c), was due to petitioners' negligence or intentional disregard of the rules and regulations. Petitioners bear the burden of disproving respondent's determination. Mendelson v. Commissioner, 305 F.2d 519 (7th Cir. 1962), affg. a Memorandum Opinion of this Court; Sutherland v. Commissioner, supra at 869; *404 Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners offered nothing to rebut respondents' determination. Accordingly, we also sustain respondent's determination that petitioners are liable for the addition to tax under section 6653(a)(1) and (2) for 1985. Respondent's computation of petitioners' taxable income must be revised to take into account respondent's concession that Mr. Nika worked a total of 1,762.50 hours during 1985, rather than 1,773.50 hours. Accordingly,