DANIEL WILLIAM LOUIS AND MARIE LOUISE LOUIS, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Louis
Docket No. 12647-90
United States Tax Court
T.C. Memo 1992-319; 1992 Tax Ct. Memo LEXIS 354; 63 T.C.M. (CCH) 3098; June 8, 1992, Filed *354 Decision will be entered for respondent. Daniel William Louis and Marie Louise Louis, pro sese. Michelle K. Loesch, for respondent. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioners' Federal income tax for the year 1986 in the amount of $ 3,281, as well as additions to tax for negligence in the amounts of $ 164.05 and 50 percent of the interest on the portion of the deficiency attributable to negligence. The issues for our decision are: (1) Whether respondent correctly determined that petitioners understated the amount of their tip income for 1986, and (2) whether petitioners are liable for the additions to tax for negligence. Some of the facts have been stipulated and are so found. *355 The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Gardnerville, Nevada, when they filed their petition. Petitioners worked at the Edgewater Hotel and Casino (the Edgewater) in Laughlin, Nevada, in the year in question. Mr. Louis worked, primarily on the graveyard shift, as a dealer, a box man, and a floor man. A box man is responsible for supervising dice games to assure that casino rules are followed and payoffs are accurate. A floor man supervises card and roulette games. Mrs. Louis was a dealer who worked primarily on the day and swing shifts. After consultation with her husband, she would fill out a joint diary of tip income on which petitioners based their calculation of tips, which were required to be reported to their employer for each biweekly pay period. Petitioners did not, however, report their tip income to the Edgewater as Mrs. Louis recorded it in the diary. In addition to their salaries, dealers receive tokes (tips) from the players at the card and dice tables, usually in the form of casino chips. At the Edgewater, dealers from all shifts pooled their tips, and then the tips were divided equally among *356 all dealers who worked during each 24-hour period. Consequently, all dealers who dealt on a particular day received the same rate of tips per hour, regardless of which shift they worked. Box and floor workers do not receive tips, but are compensated at a higher rate than dealers. During the year in question, dealers were paid approximately $ 3.50 per hour, while the rate of compensation was $ 13.125 per hour for floor workers and $ 10.625 per hour for box workers. Mr. Louis reported no tip income to his employer or on his Federal income tax return for 1986. He concedes that he received $ 1,506 in tips, as recorded in his diary. Mrs. Louis reported tip income in the amount of $ 4,593, $ 118 less than the $ 4,711 tip income recorded in the diary. Petitioners contend that their diary is accurate. For 1986 and 1987, respondent conducted a Toke Compliance Project at six casinos in and around Laughlin, Nevada, including the Edgewater. On the basis of interviews with dealers and an analysis of up to 10 tip diaries provided by dealers, respondent prepared a cumulative daily average of tips received by dealers for each day of the year 1986. On the basis of the available number of *357 diary entries for each day, respondent chose either the highest reported amount or the most frequently recurring entry for the amount of tips that dealers received that day. These figures were compiled to produce a daily average amount of tips and an overall average of tips received per hours worked for the year. This latter amount was $ 7.38 per hour. Respondent reconstructed petitioners' hours worked, including a breakdown of Mr. Louis' hours worked as a dealer, on box, and on floor, by referring directly to petitioners' time cards. This analysis produced figures significantly different from those in petitioners' diary. Respondent consequently determined that petitioners underreported their tip income for 1986. Mr. Louis concedes that he was negligent in failing to report any tips for the year. Petitioners contend, however, that their diary is an accurate basis for the reconstruction of their income. Tips constitute taxable income. Sec. 61(a); Cracchiola v. Commissioner, 643 F.2d 1383 (9th Cir. 1981), affg. T.C. Memo. 1979-3; sec. 1.61-2(a)(1), Income Tax Regs. Every employee who receives tips in the course of employment must report *358 those tips to the employer on at least a monthly basis. Sec. 6053(a). In addition to reporting their income accurately, all taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. Sec. 6001; Menequzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). When a taxpayer receives tips on a daily basis, the required records include an accurate and contemporaneous diary of such income. Bruno v. Commissioner, T.C. Memo. 1985-168; sec. 1.6001-1(a), Income Tax Regs. Such records must be retained by the taxpayer "so long as the contents thereof may become material in the administration of any internal revenue law." Sec. 1.6001-1(e), Income Tax Regs.
If taxpayers do not keep records of tip income, or if their records do not clearly reflect income, respondent may compute income in a manner that does clearly reflect income. Sec. 446(b); Menequzzo v. Commissioner, supra at 831. Respondent has latitude in adopting a suitable method for reconstructing a taxpayer's income. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Way v. Commissioner, T.C. Memo 1990-590. *359 It is sufficient if respondent's reconstruction is reasonable in light of the surrounding facts and circumstances. Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). We have accepted as reasonable the use of formulas in the reconstruction of tip income. Cracchiola v. Commissioner, supra.
Respondent's method of recomputing income carries with it the presumption of correctness, and petitioner has the burden of proving it erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). On the basis of the record in this case, we sustain respondent's determination. Respondent's reconstruction of Mr. Louis' employment records on the basis of Mr. Louis' reports to his employer differs so markedly from the diary as to undermine our confidence in the accuracy of petitioners' records. Mr. Louis testified that in the year in question he worked 77 floor shifts (616 hours) at $ 13.125 per hour, 93 box shifts (744 hours) at $ 10.625 per hour, and 68 dealer shifts (544 hours) at $ 3.50 per hour. Respondent determined that Mr. Louis reported to his employer having worked the following hours: 521.5 hours on the floor, 271.5 *360 hours in the box, and 1,246 hours as a dealer. A comparison of the hours which Mr. Louis reported to his employer diverges from his trial testimony as follows: Petitioners' Testimony
Respondent's Determination
Hours X
Pay Rate
= Total
Hours X
Pay Rate
= Total
Floor
616
$ 13.125
$ 8,085
521.5  $ 13.125
$ 6,844.69
Box
744
10.625
7,905
271.5  10.625
2,884.69
Dealer
544
3.50 1,904
1,246    3.50 4,361   $ 17,894
$ 14,090.38
According to the Form W-2 provided to Mr. Louis by the Edgewater, his compensation for 1986 was $ 14,559.30. There are additional discrepancies which indicate inaccuracy in petitioners' diary. A total of 28 days is missing from the diary; petitioners took only a 6-day vacation. Mr. Louis testified that his total tip income, including the missing days, was $ 1,506, a figure which, in light of all the facts and circumstances, we find to be unrealistically low. Given the fact that he worked 1,246 hours as a dealer, his tip rate would have been $ 1.21 per hour. Mrs. Louis reported tip income of $ 4,593. Given the fact that she worked 1,934.5 hours as a dealer, her tip rate would have been $ 2.37 per hour. *361 Finally, her recorded total tips of $ 4,711 exceed the amount of tips which she reported to her employer by $ 118. Petitioners' tips, as reported in their diary, range on average between $ 18 and $ 23 per day, an unrealistically low figure for the following reason: the increased pay rate of floor and box workers is due to the fact that they receive no tips; the tip rate of dealers should, at least, make their compensation roughly equal to that of floor and box workers. In summary, we are not persuaded of the accuracy of petitioners' records. In cases of similar facts, where dealers pooled and equally divided their tips, this Court has approved respondent's method of reconstructing income on the basis of diaries kept by other dealers. Keogh v. Commissioner, 713 F.2d 496 (9th Cir. 1983), affg. T.C. Memo. 1981-438, sub nom. Davies v. Commissioner; Petrie v. Commissioner, T.C. Memo. 1990-168. We find this method to be appropriate and an accurate reflection of petitioners' income in this case. Respondent also determined additions to tax under section 6653(a)(1)(A) and (B) for negligence or intentional disregard of rules *362 or regulations. Respondent's determination is presumed correct and the burden is on petitioner to prove these additions are erroneous. Rule 142(a); Welch v. Helvering, supra.
Taxpayers are required to maintain permanent books of account or records sufficient to establish the amount of gross income, deductions, credits, and other matters required to be shown in their tax returns. Sec. 1.6001-1(a), Income Tax Regs. Failure to keep records of income is negligence within the meaning of section 6653(a). Mr. Louis admitted to negligence in failing to report any tip income for 1986, and we have found that such records as were kept were unreliable. On the basis of the record in this case, we sustain respondent's determination of additions to tax for negligence under section 6653(a)(1)(A) and (B). Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩